SAMANTHA SAYLES, individually and on behalf of all others similarly situated,

        Plaintiffs,

        v.

ALLSTATE INSURANCE COMPANY,

        Defendant.

CIVIL ACTION NO. 3:16-CV-01534

(JUDGE CAPUTO)

## <u>MEMORANDUM</u>

Presently before the Court is a Motion to Dismiss filed by Defendant Allstate Insurance Company ("Allstate"). (Doc. 10.) For the reasons that follow, Allstate's Motion will be granted in part and denied in part.

### I. Background

The well-pleaded facts as set forth in Plaintiff's Complaint (Doc. 1-1) are as follows:

Plaintiff Samantha Sayles ("Sayles") was insured under an auto insurance policy issued by Defendant Allstate (the "Policy"). (Compl. ¶ 13.) The Policy provided for, *inter alia*, first-party medical expense benefits up to $5000 per person. (Ex. A, Doc. 11-1.) Relevant to the instant dispute, the Policy states under a subheading labeled "Proof of Claim; Medical Reports":

> As soon as possible, you [claimant] or any other person making claim must give us [Allstate] written proof of claim including all details reasonably required by us to determine the amounts payable.
>
> The injured person may be required to take physical examinations by physicians selected by us, as often as we reasonably require. The injured person or his representative must authorize us to obtain medical reports and copies of records.

(Ex. A, Doc. 11-1) (the "examination requirement"). On December 11, 2015, Sayles was involved in a motor vehicle accident within the Commonwealth of Pennsylvania in which

she sustained numerous physical injuries. (Compl. ¶ 14.) Sayles was treated by medical providers for these injuries. (*Id.* ¶ 15.) On May 20, 2016, Allstate sent a letter to Sayles's counsel, Charles Kannebecker, concerning Sayles's medical benefits under the Policy. (*Id.* ¶ 17.) The letter states in pertinent part:

> Please be advised that we [Allstate] are requesting MES Solutions to perform an Independent Medical Exam (IME) on your client, Samantha Sayles.
>
> Pursuant to our contract (policy) Section Proof of Claim: Medical Reports, an insured must submit to mental and physical examinations by physicians selected by Allstate when and as often as we may reasonably require.
>
> During the time all pending bills won't be paid until the Independent Medical Exam is completed. Once the review comes back, all bills will be processed per the results of the Independent Medical Exam review. This process will take approximately 60 days.

(Doc. 11-1 Ex. B.) In accordance with the letter, Allstate refused to pay Sayles's medical benefits until the physical examination was completed. (Compl. ¶¶ 16, 18, 26.) At no point did Allstate petition a court to compel the physical examination of Sayles that it sought. (*Id.* ¶ 21.) Sayles alleges that Allstate's examination requirement is a company-wide policy. (*Id.* ¶ 27.)

Sayles claims that the Policy's examination requirement violates the Pennsylvania Motor Vehicle Financial Responsibility Law ("MVFRL"), 75 Pa. Cons. Stat. Ann. § 1701, *et seq.* (Compl. ¶ 41.) Section 1796 of the MVFRL entitled "Mental or Physical Examination of Person" states in relevant part:

> (a) General rule. Whenever the mental or physical condition of a person is material to any claim for medical, income loss or catastrophic loss benefits, a court of competent jurisdiction . . . may order the person to submit to a mental or physical examination by a physician. The order may only be made upon motion for good cause shown. The order shall give the person to be examined adequate notice of the time and date of the examination and shall state the manner, conditions and scope of the examination and the physician by whom it is to be performed. If a person fails to comply with an order to be examined, the court or the administrator may order that the person be denied benefits until compliance.

Because Allstate did not petition a court to compel Sayles to submit to a physical examination, and consequently because there was no court order based upon a

2

showing of "good cause" directing Sayles to submit to such an examination in accordance with the statutory specifications, Sayles claims that Allstate's refusal to pay her medical benefits until she completed the physical examination that it requested violated the statute.[1] (Compl. ¶¶ 41-42; *see* Count II.)

This putative class action was originally filed in the Court of Common Pleas of Pike County on June 20, 2016. (*See* Doc. 1.) On July 25, 2016, Allstate removed the action to federal court. (*See* Doc. 16.)

## II. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion, the Court's role is limited to determining if a plaintiff is entitled to offer evidence in support of her claims. *See Semerenko v. Cendant Corp.*, 223 F.3d 165, 173 (3d Cir. 2000). The Court does not consider whether a plaintiff will ultimately prevail. *Id.* A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim. *See Gould Elecs. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

A pleading that states a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The statement required by Rule 8(a)(2) must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Detailed factual allegations are not required. *Twombly*, 550 U.S. at 555. However, mere conclusory statements will not do; "a complaint must do more than allege the plaintiff's

---

[1]     Although not expressly alleged in the Complaint, when drawing all reasonable inferences in favor of the plaintiff, it is apparent that Sayles did not submit to the IME requested by Allstate. (*See* Compl. ¶¶ 41(f), 42-43, 57(f), 64-66; Doc. 11, at 1.)

entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Instead, a complaint must "show" this entitlement by alleging sufficient facts. *Id*. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009). As such, "[t]he touchstone of the pleading standard is plausibility." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

The inquiry at the motion to dismiss stage is "normally broken into three parts:  (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, meaning enough factual allegations "'to raise a reasonable expectation that discovery will reveal evidence of'" each necessary element.  *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.  "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679**.**

In deciding a motion to dismiss, the Court should consider the complaint, exhibits attached to the complaint, and matters of public record. *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). The Court may also consider "undisputedly authentic" documents when the plaintiff's claims are based on the documents and the defendant has attached copies of the documents to the motion to dismiss. *Pension*

*Benefit Guar. Corp.*, 998 F.2d at 1196. The Court need not assume that the plaintiff can prove facts that were not alleged in the complaint, *see City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 & n.13 (3d Cir. 1998), or credit a complaint's "'bald assertions'" or "'legal conclusions,'" *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429–30 (3d Cir. 1997)).

## III. Discussion

The Complaint seeks to bring claims on behalf of a class, which Sayles generally defines as:

> All persons injured in motor vehicle accidents and insured under Pennsylvania auto insurance polices issued by [D]efendant which provided for medical benefits coverage whom [D]efendant required or directed to submit to insurance physical exams without Court order directing insured to submit to physical exams.[2]

(Compl. ¶ 43.) The Complaint raises eight (8) counts seeking relief: (1) a request for a declaratory judgment declaring Allstate in violation of § 1796 of the MVFRL and that it must hereafter comply with the statute (*id.* ¶¶ 59, 128(B)); (2) claims for a violation of § 1796 of the MVFRL (*id.* ¶ 62); (3) claims for violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 Pa. Cons. Stat. Ann. § 201-1, *et seq.* (*id.* ¶ 71); (4) claims for violations of Pennsylvania's Insurance Bad Faith Act, 42 Pa. Cons. Stat. Ann. § 8371 (*id.* ¶ 83); (5) claims for breach of the duty of good faith and fair dealing (*id.* ¶ 99); (6) claims for unjust enrichment (*id.* ¶ 108); (7) claims of intentional misrepresentation (*id.* ¶ 117); and (8) alternative claims for medical benefits (*id.* ¶ 124). Allstate filed the instant Motion to Dismiss on August 26, 2016. (Doc. 10.) Allstate's Motion is premised chiefly upon the argument that Pennsylvania law

---

[2]    The Complaint includes three other variations on this class definition. (*See* Compl. ¶ 43.)

permits parties to enter into an insurance contract like the one presently at issue, which contains a provision that requires the insured to submit to an IME as often as the insurer "reasonably requires." (*See* Doc. 11, at 7-11.) Because Sayles did not attend the IME which Allstate required, Allstate contends that she breached the insurance contract. (*Id.* at 11.) Sayles filed her Brief in Opposition on September 20, 2016. (Doc. 23.) Allstate filed its Reply Brief on October 11, 2016. (Doc. 24.) Allstate's Motion is now ripe for disposition.

## A.    Counts I and II: Section 1796 of Pennsylvania's MVFRL

First, Allstate moves to dismiss Counts I and II of Sayles's Complaint on the ground that its examination requirement in the Policy, which purportedly allows Allstate to require its insureds to submit to an IME by a physician of Allstate's choosing as a condition precedent to payment of medical expenses, is enforceable notwithstanding § 1796 of the MVFRL. (*See* Doc. 11, at 7-11.) Based on the allegations in the Complaint and supporting documents, the Court predicts that the Pennsylvania Supreme Court would find Allstate's examination requirement in conflict with § 1796 and thus unenforceable. Accordingly, Allstate's Motion will be denied with respect to Counts I and II.[3]

The Pennsylvania Supreme Court has not addressed the predominant issue presently before the Court: whether a provision in an automobile insurance policy that requires an insured to submit to an IME by a physician selected by the insurer as often as the insurer reasonably requires in order to receive her first-party medical benefits conflicts with the MVFRL and, therefore, violates Pennsylvania public policy. Because the Court is sitting in diversity, and because the Commonwealth's highest court has not issued an opinion on point, the Court is "charged with predicting how that court would

---

[3]     Because the Court is only called upon to dispose of Allstate's Motion to Dismiss, this opinion refrains from declaring the examination requirement void or otherwise finding in favor of the nonmoving party.

6

resolve the question at issue." *Colliers Lanard & Axilbund v. Lloyds of London*, 458 F.3d 231, 236 (3d Cir. 2006). In making this prediction, the Court must consider:

> (1) what that court has said in related areas; (2) the decisional law of the state intermediate courts; (3) federal cases interpreting state law; and (4) decisions from other jurisdictions that have discussed the issue.

*Id.* "[L]ower state court decisions are not controlling on an issue on which the highest court of the state has not spoken," however, "federal courts must attribute significant weight to these decisions in the absence of any indication that the highest state court would rule otherwise." *Wisniewski v. Johns–Manville Corp.*, 759 F.2d 271, 273-74 (3d Cir. 1985). That is, "due deference" must be given to the well-reasoned decisions of intermediate state courts. *See U.S. Underwriters Ins. Co. v. Liberty Mut. Ins. Co.*, 80 F.3d 90, 93 (3d Cir. 1996). Of course, a federal court is free to reach a result that is contrary to an intermediate appellate court "if, by analyzing other persuasive data, [the court] predict[s] that the State Supreme Court would hold otherwise." *Gruber v. Owens-Ill. Inc.*, 899 F.2d 1366, 1369 (3d Cir. 1990) (alterations, internal quotation marks, and citation omitted). Therefore, "a federal court interpreting state law may discount state appellate decisions it finds flawed, if it predicts the state supreme court would reach a contrary result." *In re Makowka*, 754 F.3d 143, 148 (3d Cir. 2014).

As this case turns largely on how the Pennsylvania Supreme Court would interpret § 1796 of the MVFRL, the Court is also guided by the Pennsylvania rules of statutory construction. *See Transguard Ins. Co. of Am., Inc. v. Hinchey*, 464 F. Supp. 2d 425, 433 (M.D. Pa. 2006). "These rules provide that where a statute is clear on its face and unambiguous, it should be interpreted by its plain meaning." *Id.* (citing 1 Pa. Cons. Stat. Ann. § 1921(b))[4]; *see Warrantech Consumer Prods. Servs., Inc. v. Reliance Ins. Co. in Liquidation*, 96 A.3d 346, 354 (Pa. 2014) ("When the words of a statute are clear

---

[4]     Section 1921(b) provides:

> When the words of statute are clear and free from ambiguity, the letter of it is not be disregarded under the pretext of pursuing its spirit.

7

and unambiguous, there is no need to look beyond the plain meaning of the statute 'under the pretext of pursuing its spirit.'" (quoting § 1921(b))).

Returning to the relevant statutory language, § 1796(a) of the MVFRL provides:

> Whenever the mental or physical condition of a person is material to any claim for medical . . . benefits, a court of competent jurisdiction . . . may order the person to submit to a mental or physical examination by a physician. The order may only be made upon motion for good cause shown. The order shall give the person to be examined adequate notice of the time and date of the examination and shall state the manner, conditions and scope of the examination and the physician by whom it is to be performed. If a person fails to comply with an order to be examined, the court . . . may order that the person be denied benefits until compliance.

According to Allstate, the statute does not require Allstate to obtain a court order based upon a showing of good cause in order to have its insureds submit to an IME prior to receiving medical benefits. (Doc. 11, at 7.) Instead, Allstate contends that the statute merely provides when a court "may" order a person to submit to an IME, and does not foreclose an insurer and an insured from entering into an insurance contract that includes a mandatory IME provision which the insurer may invoke in its discretion. (*See id.*) In response, Sayles argues that the procedure prescribed by the statute applies to "any claim" for medical benefits "whenever" the mental or physical condition of a person is material to that claim, without exception. (*See* Doc. 23, at 3.) Sayles contends that allowing insurers to insert requirements, such as the examination requirement, into insurance policies would permit insurers to circumvent the procedure and protections the legislature afforded insureds in enacting § 1796. (*See id.* at 4.)

## 1. Allstate's Examination Requirement Conflicts with the Plain Language of § 1796

The Court reads the plain language of § 1796 to prohibit precisely what Allstate allegedly did in this case. Section 1796 sets forth specific requirements that an insurer must satisfy in order to have its insureds submit to an IME in connection with any claim for medical benefits: the insurer (1) must file a petition with a court, (2) satisfy its burden

of demonstrating that the person's mental or physical condition is "material" to her claim for benefits, and (3) satisfy its burden of demonstrating "good cause" for the IME. 75 Pa. Cons. Stat. Ann. § 1796(a); *see State Farm Ins. Cos. v. Swantner*, 594 A.2d 316, 321-22 (Pa. Super. Ct. 1991). Additionally, the plain language of the statute specifically requires a court–as a disinterested adjudicator–to decide (a) the time and date of the IME, (b) the manner, conditions, and scope of the IME, and, importantly, (c) the physician who will perform the IME. § 1796(a). Consequently, because it appears that Allstate's examination requirement permits the insurer to require its insureds to submit to an IME without first filing a petition demonstrating good cause, and because the examination requirement transfers control over the statutory safeguards from the province of an impartial court to the discretion of an interested insurer, the Court predicts that the Pennsylvania Supreme Court would find the examination requirement, as alleged, in conflict with § 1796 and thus violative of Pennsylvania public policy. *See Generette v. Donegal Mut. Ins. Co.*, 957 A.2d 1180, 1190-91 (Pa. 2008) ("[W]e are obliged to find contractual language to be contrary to public policy when it violates statutory language[.]").

The language of § 1796(a) unambiguously provides for a broad scope of the statute's application: "Whenever" a person's mental or physical condition is material to "any claim" for, *inter alia*, medical benefits. 75 Pa. Cons. Stat. Ann. § 1796(a). In that case, the statute authorizes a court to order such a person to submit to a mental or physical examination, but only upon a motion demonstrating "good cause."[5] *Id.* If "good

---

[5]     The showing of "good cause" under § 1796 requires the petitioner to allege reasons for an IME that "rise to a level of specificity which will insure that a claimant will not be forced to submit to unnecessary examinations in bad faith." *State Farm Ins. Cos. v. Hunt*, 569 A.2d 365, 366 (Pa. Super. Ct. 1990). The petitioner must demonstrate "a need, rather than a mere desire, for an independent medical examination." *State Farm Mut. Auto Ins. Co. v. Zachary*, 536 A.2d 800, 801 (Pa. Super. Ct. 1987). "Before ordering a party to submit to an examination, however, a trial court should require a showing that a bona fide controversy exists regarding the nature of the claimant's injuries. It must also be shown that the

cause" is demonstrated, the statute empowers the courts, not the insurer, to decide the time, date, manner, conditions, and scope of the IME, as well as the physician who will perform the exam. *Id.* Thus, as relevant to Sayles's Complaint, the Court reads the plain language of § 1796 to state that whenever a person's physical condition is material to any claim for medical benefits, a court may order that person to submit to an IME, but only upon a motion demonstrating good cause. Accordingly, because the Complaint and supporting documents indicate that the examination requirement allows Allstate to require Sayles to submit to an IME as a prerequisite to her claim for medical benefits, without first demonstrating "good cause" to a court, Sayles has sufficiently alleged that this contractual provision conflicts with the unambiguous language of the statute. *See Generette*, 957 A.2d at 1192 ("[S]tipulations in a contract of insurance in conflict with, or repugnant to, statutory provisions which are applicable to, and consequently form a part of, the contract, must yield to the statute, and are invalid, since contracts cannot change existing statutory laws.") (quoting *Prudential Prop. & Cas. Ins. Co. v. Colbert*, 813 A.2d 747, 750 (Pa. 2002)); *Colbert*, 813 A.2d at 750 ("[C]ourts must give plain meaning to a clear and unambiguous contract provision *unless to do so would be contrary to a clearly expressed public policy*.") (emphasis added). Additionally, because the Policy provision at issue appears to give Allstate the discretion to select the reviewing physician and set the manner in which the IME will be executed, the Court finds that the provision would be in further conflict with the plain language of § 1796, which reserves those determinations to the courts. *See Allwein v. Donegal Mut. Ins. Co.*, 671 A.2d 744, 753 (Pa. Super. Ct. 1996) ("'[C]ontract provisions [that] are not in accord with public policy, and are not advantageous to the insured' are particularly subject to a finding of

---

requested mental or physical examination will substantially aid the insurer in evaluating the claim." *Hunt*, 569 A.2d at 366; *see State Farm Ins. Cos. v. Swantner*, 594 A.2d 316, 321-22 (Pa. Super. Ct. 1991) (declining to enumerate a specific test for assessing "good cause," but noting that the burden is on the moving party to affirmatively demonstrate that "good cause" exists).

invalidity." (quoting George J. Couch, Couch on Insurance 2d (rev. ed.) § 13.7, at 827-29 (1984))).

Therefore, the Court concurs with the well-reasoned opinion of the district court in *Scott v. Travelers Commercial Insurance Co.* and "read[s] § 1796 to plainly require the insurer to petition the state court and obtain an order for an IME of its insured based upon a showing of 'good cause.'" *Scott v. Travelers Commercial Ins. Co.*, 1:14-CV-00535, 2016 WL 5851960, at *7 (M.D. Pa. Oct. 6, 2016).

> ### 2. The Pennsylvania Supreme Court Has Found Other Provisions of the MVFRL to Prevail over Conflicting Language in Insurance Policies

In making its prediction, the Court considers what the Pennsylvania Supreme Court has held in related areas. Although the Commonwealth's highest court has not resolved the specific question presently at issue, it has repeatedly held that "[a]s a general rule, stipulations in a contract of insurance in conflict with, or repugnant to, statutory provisions which are applicable to, and consequently form a part of, the contract, must yield to the statute, and are invalid, since contracts cannot change existing statutory laws." *Prudential Prop. & Cas. Ins. Co. v. Colbert*, 813 A.2d 747, 750 (Pa. 2002*)* (quoting *Allwein v. Donegal Mut. Ins. Co.*, 671 A.2d 744, 752 (Pa. Super. Ct. 1996) (quoting George J. Couch, Couch on Insurance 2d (rev. ed.) § 13.7, at 827 (1984))); *see Warrantech Consumer Prods. Servs., Inc. v. Reliance Ins. Co. in Liquidation*, 96 A.3d 346, 354 (Pa. 2014) (same); *Generette v. Donegal Mut. Ins. Co.*, 957 A.2d 1180, 1191 (Pa. 2008) (same). More specifically, the Pennsylvania Supreme Court has found clear provisions in insurance policies unenforceable when they conflict with the plain language of the MVFRL.

In *Colbert*, for example, the court found an insurance policy that defined "insured" more narrowly than the MVFRL in conflict with the statutory language and thus unenforceable. 813 A.2d at 751. The court held that "[n]othing in the MVFRL permits [an

insurer] to diminish the MVFRL's definition of 'insured' and thereby provide coverage of a lesser scope than the MVFRL requires." *Id.* Accordingly, although the insurance policy's provision was "clear and unambiguous," the court found that the "policy impermissibly narrows and conflicts with the plain language of the MVFRL," and thus was unenforceable. *Id.*

Subsequently in *Generette*, the court reiterated that, although declaring unambiguous provisions in an insurance contract void as against public policy comes with a "heavy burden," Pennsylvania courts nevertheless "are obliged to find contractual language to be contrary to public policy when it violates statutory language[.]" 957 A.2d at 1190-91. Under this principle, the court found an unambiguous contract provision unenforceable because it conflicted with the public policy of the MVFRL to provide "excess" rather than "gap" underinsured motorist coverage. *Id.* at 1192. The challenged provision limited recovery of UIM coverage under the second priority policy to the amount by which that policy's coverage limit exceeded the coverage of the UIM policy at the first priority level. *See id.* at 1183. In holding the policy provision unenforceable, the court held that "the structure of the MVFRL's definition of an underinsured motorist requires the provision of excess rather than gap underinsured motorist coverage because the definition is framed in terms of the total of the injured's losses rather than the injured's own insurance coverage limits."[6] *Id.* at 1191. Thus, although the MVFRL's definition of "underinsured motor vehicle" does not specifically detail what constitutes

---

[6]    The MVFRL defines an "underinsured motor vehicle" as: "A motor vehicle for which the limits of available liability insurance and self-insurance are insufficient to pay losses and damages." 75 Pa. Cons. Stat. Ann. § 1702. As explained by the Superior Court, the statutory language defines an underinsured vehicle "as one for which the tortfeasor's liability limits are *less than the victim's losses and damages*." *Allwein v. Donegal Mut. Ins. Co.*, 671 A.2d 744, 748 (Pa. Super. Ct. 1996) (emphasis in original). Because this definition "is framed in terms of the total of the injured's losses rather than the injured's own insurance coverage limits," the Pennsylvania Supreme Court concluded that the "structure" of this definition "requires the provision of excess rather than gap underinsured motorist coverage." *Generette*, 957 A.2d at 1191.

12

underinsured motorist "coverage," the court nevertheless found that the "structure" of the MVFRL's definition of "underinsured motor vehicle" required insurers to provide excess rather than gap underinsured motorist coverage. *See id.* (citing *Allwein*, 671 A.2d at 748). Because the policy provision conflicted with the MVFRL, the court found it unenforceable. *Id.* at 1192.

The Court reads these cases to demonstrate a willingness on the part of the Pennsylvania Supreme Court to void unambiguous provisions in insurance policies that conflict with the MVFRL to the detriment of insureds. The *Colbert* court voided an insurer-friendly contract provision that conflicted with and diminished the plain language of the MVFRL. Here, the examination requirement conflicts with and reduces the plain language of § 1796 to the benefit of the insurer, as it allows insurers to require insureds to submit to IMEs without demonstrating good cause to a neutral party and permits the insurer, rather than a court, to dictate the terms of the examination. Moreover, the *Generette* court found a policy provision void as against public policy based on the "structure" of the statutory definition of "underinsured motor vehicle," despite the fact that the MVFRL does not specifically state that excess rather than gap UIM coverage is required. Similarly, although § 1796 is "silent" as to whether an insurer is permitted to include an IME provision in its policy (Doc. 24, at 8), the structure of the statutory provision makes clear that the procedural safeguards apply "[w]*henever* the mental or physical condition of a person is material to *any claim* for medical . . . benefits. . . ." § 1796(a) (emphasis added).

Separately and importantly, the Court notes that the Pennsylvania Supreme Court has long recognized that "[t]he traditional contractual approach fails to consider the true nature of the relationship between the insurer and its insureds. Only through the recognition that insurance contracts are not freely negotiated agreements entered into by parties of equal status; only by acknowledging that the conditions of an insurance contract are for the most part dictated by the insurance companies and that the insured

cannot 'bargain' over anything more than the monetary amount of coverage purchased, does our analysis approach the realities of an insurance transaction." *Collister v. Nationwide Life Ins. Co.*, 388 A.2d 1346, 1353 (Pa. 1978). The Court's prediction is further guided by these "realities" recognized by the Commonwealth's highest court.

Accordingly, the Court considers these decisions in predicting that the Pennsylvania Supreme Court would similarly find Allstate's examination requirement in conflict with § 1796.

### 3. Decisions from the Superior Court and Federal Courts Interpreting § 1796

Although the Court rejects Allstate's arguments in support of its Motion to Dismiss Counts I and II, its position is not without support. Indeed, in concurring with the decision of Magistrate Judge Schwab, the Court necessarily departs from the conclusion reached by the district court in *Williams v. Allstate Insurance Co.*, 595 F. Supp. 2d 532 (E.D. Pa. 2009). The *Williams* court predicted that the Pennsylvania Supreme Court would find a similar insurance policy provision enforceable. In so finding, the *Williams* court relied heavily on the Pennsylvania Superior Court's decision in *Fleming v. CNA Insurance Cos.*, 597 A.2d 1206 (Pa. Super. Ct. 1991). *Fleming* involved an appeal from a trial court's order granting an automobile insurance company's motion to compel an IME of its insureds pursuant to § 1796 of the MVFRL. *See id.* at 1206-07. Before the trial court, the insurer sought to compel an IME based on: (1) "good cause" as defined under § 1796; (2) Pennsylvania Rule of Civil Procedure 4010; and (3) a policy provision requiring an injured person to submit to a physical examination by a physician of the insurer's choice. *See id.* at 1207. The trial court found "good cause" existed as defined under § 1796 and granted the motion. *See id.* On appeal before the Superior Court, the insureds argued that the insurer failed to show the requisite good cause for the IME. *See id.* The Superior Court affirmed the trial court's decision, however, it did so based solely on the policy provision, concluding that the provision "clearly requires [the insureds'] submission

14

to a medical exam to be performed by a doctor chosen by [the insurer]. There is no prerequisite showing of 'good cause' necessary." *Id.* But in so holding, the Superior Court specifically noted that the insureds "did not challenge this policy provision as being void as against public policy or void as unconscionable in their Answer in the lower court or on appeal." *Id.* at 1208. Thus, although the Superior Court affirmed the trial court's order based on a similar policy provision, it expressly rendered its decision without undertaking an analysis of whether the contract provision violated Pennsylvania public policy. *See id.*

Nevertheless, in making its prediction the *Williams* court accorded significant weight to the *Fleming* decision. *See Williams*, 595 F. Supp. 2d at 541. Although the *Fleming* court deliberately abstained from analyzing whether the policy provision was void as against public policy, the *Williams* court found *Fleming* to have "explicitly discussed the interplay between section 1796 and a policy of insurance that permits an insurance company to unilaterally compel medical examinations, without a showing of 'good cause.'" *Id.* at 538. The *Williams* court concluded that the Superior Court in *Fleming* "clearly found that a contractual provision requiring the insured to attend a medical examination as a prerequisite to benefits does not violate the[] twin purposes" of § 1796.[7] *Id.* at 543. At bottom, the *Williams* court was of the opinion that the Superior Court's decision in *Fleming* "impliedly considered the enforceability of such a [policy] provision in light of the MVFRL," and believed the Superior Court signaled its approval of such a provision notwithstanding the MVFRL because "it chose to order the insured[s] to attend the examination pursuant to the contract, instead of simply affirming the trial court's finding of good cause." *Id.* at 543 n.6.

---

[7]     The "twin purposes" of § 1796 are to (1) protect an insured from "harassment, untoward intrusion and unwarranted examination"; and (2) ensure that an insured "could not 'ignore reasonable limitations on treatment by continuing in treatment without validation or justification.'" *Williams v. Allstate Ins. Co.*, 595 F. Supp. 2d 532, 542-43 (E.D. Pa. 2009) (quoting *State Farm Ins. Cos. v. Swantner*, 594 A.2d 316, 322 (Pa. Super. Ct. 1991)).

The Court does not find *Fleming* nearly as persuasive. As noted, the Superior Court expressly avoided the question of whether the contract provision violated Pennsylvania public policy. To the extent *Fleming*'s decision to affirm the trial court's order based on the unchallenged contract provision implied that the court found the provision not to violate Pennsylvania public policy, the absence of any meaningful analysis on that issue renders any such an implication wholly unpersuasive. Indeed, considering the insureds in *Fleming* never raised a public policy argument at any stage of the litigation, and considering the Superior Court felt it necessary to announce that specific caveat to its opinion, the Court does not interpret *Fleming* as implying that the Superior Court would uphold the contract provision had it in fact been challenged on public policy grounds. Certainly, and contrary to the opinion of the *Williams* court, the Court does not believe that the *Fleming* court "*clearly* found that a contractual provision requiring the insured to attend a medical examination as a prerequisite to benefits does not violate the[] twin purposes" of § 1796. *Williams*, 595 F. Supp. 2d at 543 (emphasis added). Accordingly, because the Court does not find *Fleming* to be on point, it does not accord significant weight to this opinion. *See Miller v. U.S. Fid. & Guar. Co.*, 909 S.W.2d 339, 343 (Ky. Ct. App. 1995) ("We do not consider the holding of *Fleming* persuasive. In concluding its analysis of whether the obligor's policy provision could be enforced, the appellate court specifically noted that the claimants 'did not challenge this policy provision as being void as against public policy or void as unconscionable.'") (quoting *Fleming*, 597 A.2d at 1208); *see also Scott*, 2016 WL 5851960, at *8.

In addition to its reliance on *Fleming*, the *Williams* court concluded that the challenged contractual provision was consistent with the two-fold purpose of § 1796: (1) protecting insureds from "harassment, untoward intrusion and unwarranted examination"; and (2) protecting insurers by providing checks designed to prevent insureds from "ignor[ing] reasonable limitations on treatment by continuing in treatment without validation or justification." 595 F. Supp. 2d at 542-43 (quoting *State Farm Ins. Cos. v. Swantner*, 594 A.2d 316, 322 (Pa. Super. Ct. 1991)). The Court disagrees.

16

Allstate's examination requirement fails entirely to take the protections afforded to insureds into consideration. Not only does it circumvent the "good cause" requirement imposed by the legislature, it also transfers the relevant decision-making authority from the courts to the interested insurer. Furthermore, the examination requirement removes the burden that the legislature allocated to the insurer to file a petition demonstrating "good cause" and places that burden on the insured, who must file a complaint and initiate full-scale litigation in order to challenge the "reasonableness" of the IME. As such, the Court does not find that Allstate's examination requirement, as alleged, is consistent with the purposes of § 1796.

Furthermore, the *Williams* court's reliance on the fact that "other states, acting within the framework of their own no-fault insurance statutes, have consistently enforced contractual provisions requiring an insured to submit to medical examinations as a condition precedent to coverage" appears to be misplaced. 595 F. Supp. 2d at 544 & n.9; *see Scott*, 2016 WL 5851960, at *10. *Williams* relied on cases out of Colorado, Georgia, Maryland, Massachusetts, and Ohio, which found that insurers could include policy provisions requiring insureds to submit to an IME as a condition precedent to the payment of benefits. *Williams*, 595 F. Supp. 2d at 544 n.9. However, none of these cases considered a statutory provision similar to § 1796. *See id.* (citing *Jensen v. Am. Family Mut. Ins. Co.*, 683 P.2d 1212, 1213 (Colo. App. 1984) (holding only that a policy provision similar to Allstate's examination requirement did not impermissibly burden the "basic purpose" of the then-governing No-Fault Act); *Falagian v. Leader Nat'l Ins. Co.*, 307 S.E.2d 698, 700 (Ga. Ct. App. 1983) (addressing only a statutory provision that required an insurer to show that its refusal to pay benefits was "in good faith"); *Huntt v. State Farm Mut. Auto. Ins. Co.*, 527 A.2d 1333, 1334 (Md. Ct. Spec. App. 1987) (finding policy provision not in conflict with sections of Maryland's PIP statute, which did not contain a provision similar to § 1796); *Bailey v. Metro. Prop. & Cas. Ins. Co.*, No. 01307B, 2002 WL 1555100, at *3 (Mass. Super. Ct. Apr. 29, 2002) (noting claimant's refusal to participate in an IME allows insurer to avoid the contract, but relying on a PIP

statute, G.L.c. 90 § 34M, that, in contrast to § 1796, expressly states: "The injured person *shall* submit to physical examinations by physicians *selected by the insurer as often as may be reasonably required*. . . .") (emphasis added); *Williamson v. State Farm Ins. Co.*, No. Civ.A. 20182, 2004 WL 1178351, at \*3-\*5 (Ohio Ct. App. May 28, 2004) (considering only Ohio Rule of Civil Procedure 35, not a separate statutory "good cause" requirement)).

In fact, although not considered by the *Williams* court, the Commonwealth of Kentucky has enacted a statutory provision that is similar to § 1796. *See* Ky. Rev. Stat. Ann. § 304.39-270.[8] The Kentucky Court of Appeals has held that the "[p]ublic policy underlying th[is] statute dictates that [an insurer] may not enforce an overreaching policy provision requiring an independent medical examination when and as often as the company may reasonably require in clear derogation of the statutory language." *Miller v. U.S. Fid. & Guar. Co.*, 909 S.W.2d 339, 343 (Ky. Ct. App. 1995) (internal quotation marks omitted). Rather than relying on state-court opinions that did not consider statutory provisions akin to § 1796, the Court finds it substantially more appropriate to rely on opinions addressing this issue out of Kentucky, given that the sister commonwealth has enacted a statutory provision that is in fact similar to § 1796.

In departing from the opinion of the *Williams* court, the Court finds the reasoning of Magistrate Judge Schwab more persuasive. In *Scott v. Travelers Commercial*

---

[8]     The relevant statutory provision reads:

> If the mental or physical condition of a person is material to a claim for past or future basic or added reparation benefits, the reparation obligor may petition the circuit court for an order directing the person to submit to a mental or physical examination by a physician. Upon notice to the person to be examined and all persons having an interest, the court may make the order for good cause shown. The order shall specify the time, place, manner, conditions, scope of the examination, and the physician by whom it is to be made.

> Ky. Rev. Stat. Ann. § 304.39-270(1). *Compare* 75 Pa. Cons. Stat. Ann. § 1796(a).

*Insurance Co.*, No. 1:14-CV-00535, 2016 WL 5851960 (M.D. Pa. Oct. 6, 2016), Magistrate Judge Schwab predicted that the Pennsylvania Supreme Court would not enforce an insurance policy provision that required an insured to submit to IMEs conducted by physicians selected by the insurer as often as the insurer reasonably required, "because such a provision is in clear derogation of the plain language set forth in § 1796 of the MVFRL." *Id.* at *8. In so holding, the *Scott* court found the statutory language in § 1796 "to plainly require the insurer to petition the state court and obtain an order for an IME of its insured based upon a showing of 'good cause.'" *Id.* at *7 (quoting 75 Pa. Cons. Stat. Ann. § 1796). The court further read the plain language of § 1796 to "require[] that the courts, not the insurer or the policy's language, determine the precise contours of such IMEs, including: (a) providing the insured with notice of the date and time of the IME, (b) setting the scope and conditions of the IME, and (c) prescribing the physician by whom the IME is to be performed." *Id.* Because "[a]ny other interpretation of the statutorily mandated role of the court in making a good cause determination upon evidence presented to it and in prescribing the parameters regarding time and scope of the physical exam would render § 1796 meaningless," the *Scott* court rejected the reasoning of the *Williams* court, found the insurance policy provision conflicted with the MVFRL, and held the provision void as against public policy. *Id.* at *8-*9, *12.

The Court agrees with the reasoning of the *Scott* court. To predict otherwise would allow insurers to circumvent the "good cause" requirement prescribed by the legislature. Moreover, it would permit interested insurers to transfer the relevant decision-making authority from the courts to themselves. Such a conclusion would render the protections afforded to insureds by § 1796 meaningless. Indeed, a contrary conclusion would allow insurers to effectively limit an insured's coverage "by requiring the insured to *either* submit to the unilaterally compelled IME or be denied coverage." *Scott*, 2016 WL 5851960, at *8 (emphasis in original). Had the legislature intended such unilateral limitations on coverage, it would not have imposed the good cause requirement. *Id.* Accordingly, the Court is persuaded by the reasoning in *Scott* that the

Pennsylvania Supreme Court would find Allstate's examination requirement, as alleged, in conflict with the plain language of § 1796 and therefore void as against public policy.

### 4.    "Other Persuasive Data"

Considering that Pennsylvania case law has left the issue confronting the Court unresolved, the Court also finds it appropriate to turn to "other persuasive data" in making its prediction. Two opinions of the Honorable R. Stanton Wettick, Jr. of the Court of Common Pleas of Allegheny County persuasively addressed the exact issue at hand. In *Erie Insurance Exchange v. Dzadony*, 39 Pa. D.&C.3d 33, 1986 WL 2077 (Pa. Com. Pl. 1986), Judge Wettick declined to enforce a provision in an automobile insurance policy that required the insured to submit to IMEs by a physician selected by the insurer as often as the insurer "reasonably require[d]." *See id.* at 36-38. Judge Wettick noted that the MVFRL "is comprehensive legislation[9] governing the rights and obligations of the insurance company and the insured under liability insurance policies covering motor vehicles." *Id.* at 36 (citing to 75 Pa. Cons. Stat. Ann. §§ 1711, 1712, 1715, 1716, 1718, 1731).[10] Specifically, in enacting § 1796(a) of the MVFRL, Judge Wettick noted that "the Legislature has balanced the interests of the insurance company in obtaining more complete information in support of a claim through a physical examination by a physician selected by the insurance company and the interests of the insured in having claims paid without being subjected to the inconvenience and invasion of privacy that such an examination imposes, by providing for an examination pursuant to a court order obtained

---

[9]    The Pennsylvania Supreme Court has subsequently described the MVFRL as a "comprehensive scheme for promoting financial responsibility in the motoring public. . . ." *Lewis v. Erie Ins. Exch.*, 793 A.2d 143, 149 (Pa. 2002).

[10]    As further explained by Judge Wettick, the MVFRL "specifies the benefits that must be provided and the benefits that must be made available; it requires various exclusions; and it provides for payment of benefits within 30 days after the insurance company receives reasonable proof of the amount of the benefits." *Erie*, 39 Pa. D.&C.3d at 36 (internal citations omitted).

by the insurance company based upon good cause shown." *Erie*, 39 Pa. D.&C.3d at 37. Thus, because the contract provision the insurer sought to enforce made payment of medical benefits "dependent upon the insured appearing for a physical examination that the law does not require," Judge Wettick found the provision "inconsistent" with the legislative scheme under the MVFRL and thus unenforceable. *Id.* at 36.

Eleven years later, Judge Wettick had the opportunity to address this issue once again. In *Nationwide Insurance Co. v. Hoch*, 36 Pa. D.&C.4th 256, 1997 WL 1056869 (Pa. Com. Pl. 1997), Judge Wettick reaffirmed the holding in *Erie.* In so doing, Judge Wettick expanded upon the "good cause" standard, concluding that an "insurance company is not entitled to a medical examination until it has pursued non-intrusive means to obtain reliable information concerning the insured's physical condition such as providing the insured with the opportunity to submit medical records from her treating physician addressing any questions of the insurance company." *Hoch*, 36 Pa. D.&C.4th at 257 (citing *State Farm Insurance Cos. v. Swantner*, 594 A.2d 316 (Pa. Super. Ct. 1991)). Notably, the *Hoch* opinion was issued after the Superior Court's decision in *Fleming*. Judge Wettick reviewed the procedural history and holding of *Fleming*, concluding that the "*Fleming* opinion never reached the issues raised in . . .[*Erie*], [and] there is no appellate court case law that is inconsistent with this opinion." *Id.* at 264. As such, Judge Wettick found the insurer failed to demonstrate "good cause" and denied the insurer's petition to compel an IME, despite the fact that the policy had a similar provision to Allstate's examination requirement. *See id.*

The Court finds the opinions of Judge Wettick considerably more persuasive than the "implication" of *Fleming*. These two opinions are the only state-court decisions of which this Court is aware that engaged in any meaningful analysis of the issue presently before the Court.[11] While it is true that some Pennsylvania trial courts have cited *Fleming*

---

[11]    As noted, *Fleming* expressly abstained from analyzing this issue. Moreover, aside from the opinions of Judge Wettick, the court is not aware of any other state trial

as approving of insurance policy provisions similar to Allstate's examination requirement, it appears that these courts simply accepted that proposition without considering whether those provisions run afoul of the public policy expressed in § 1796. *See Scott*, 2016 WL 5851960, at \*9 n.12. These courts certainly never expressly examined the question currently confronting the Court, but instead cited to *Fleming*, primarily in dicta, for the proposition that an insurer can effectively circumvent the "good cause" requirement of § 1796(a) via a provision in its policy. *See, e.g.*, *DiGiacinto v. Obelinas*, 38 Pa. D.&C.5th 72, 2014 WL 11241680, at \*8 n.4 (Pa. Com. Pl. 2014) (citing *Fleming* in an "illustration" in a footnote); *Olsofsky v. Progressive Ins. Co.*, 52 Pa. D.&C.4th 449, 478 n.2, 2001 WL 1809818 (Pa. Com. Pl. 2001) (citing *Fleming* in dictum in a footnote). Notably, however, at least one other Pennsylvania trial court recently denied an insurer's petition to compel its insured to submit to an IME due to a lack of "good cause," despite the fact that the insurance policy contained a provision similar to Allstate's examination requirement, and despite the fact that the insurer raised the decisions in *Fleming* and *Williams* in support of its position. *See Selcovitz v. Erie Ins. Exch.*, No. 150700230, 2015 WL 9583711, at \*1-\*2 (Pa. Com. Pl. Nov. 24, 2015). Therefore, in light of the apparent confusion in the state courts, the Court finds it appropriate to rely on Judge Wettick's decisions in *Erie* and *Hoch*, considering that they represent the most thorough analyses by a Pennsylvania court on the question of whether an insurance policy provision that circumvents the requirements of § 1796 conflicts with the MVFRL.

Moreover, the Court agrees with the general principles set forth in Judge Wettick's decisions. As explained previously, the Court concurs with Judge Wettick's

court that has expressly addressed whether a policy provision like the examination requirement conflicts with the MVFRL. *See, e.g.*, *DiGiacinto v. Obelinas*, 38 Pa. D.&C.5th 72, 2014 WL 11241680, at \*8 n.4 (Pa. Com. Pl. 2014) (citing *Fleming* only in an "illustration" in a footnote); *Hollock v. Erie Ins. Exch.*, 54 Pa. D.&C.4th 449, 552-53 (Pa. Com. Pl. 2002) (citing *Fleming* but not considering whether such a contract provision violated public policy); *Olsofsky v. Progressive Ins. Co.*, 52 Pa. D.&C.4th 449, 478 n.2 (Pa. Com. Pl. 2001) (same).

opinion that *Fleming* did not address the question presently before the Court and is unpersuasive on this issue. *See Hoch*, 36 Pa. D&C.4th at 264. Additionally, the Court agrees with Judge Wettick's conclusion that policy provisions like the examination requirement "impose additional burdens on an insured" before the insured may recover benefits to which she may be statutorily entitled, and therefore are "inconsistent" with the legislative scheme prescribed by the MVFRL. *Id.* at 261 (quoting *Erie*, 39 Pa. D.&C.3d at 36). Furthermore, the Court finds considerable merit to Judge Wettick's commitment to preserving the balance of the interests struck by the legislature in enacting § 1796. *See id.*

### 5. Decisions from Other Jurisdictions That Have Discussed the Issue

Finally, in making its prediction the Court turns to decisions from other jurisdictions that have persuasively discussed this issue. As noted previously, the Kentucky Court of Appeals has analyzed statutory language that is quite similar to § 1796 in the context of whether an insurer can require an insured to submit to an IME without first satisfying the "good cause" standard if such a requirement was included in an insurance policy. *See Miller v. U.S. Fid. & Guar. Co.*, 909 S.W.2d 339, 343 (Ky. Ct. App. 1995). In *Miller*, after finding that the insurer failed to meet the "good cause" standard under Kentucky's Motor Vehicle Reparations Act,[12] the court turned to whether the insurance policy could require the insured to submit to an IME irrespective of the statute:

> Were we to conclude that [the insurer] was nevertheless entitled to the independent medical examination by virtue of its policy provision, we would, in effect, impermissibly delegate (indeed, abdicate) to [the insurer] the legislature's role in enacting protective legislation. In enacting the MVRA, the legislature clearly struck a balance, taking into account the needs and expectations of both the insured and the obligor. . . . The statute clearly sets forth the standard by which an insured can be forced to undergo independent medical examination and creates a statutory presumption of reasonableness of medical bills as submitted. Public policy underlying that statute dictates that [the insurer] may not enforce an overreaching policy provision requiring an independent medical

---

[12]     *See* Ky. Rev. Stat. Ann. § 304.39-270(1).

23

examination "when and as often as the company may reasonably require" in clear derogation of the statutory language.

*Miller*, 909 S.W.2d at 343 (internal citations omitted); *see Coleman v. Bee Line Courier Serv., Inc.*, 284 S.W.3d 123, 132 (Ky. 2009) (citing *Miller* with approval). The *Miller* court also found the Pennsylvania Superior Court's decision in *Fleming* "unpersuasive," commenting that the *Fleming* court "specifically noted that the claimants 'did not challenge this policy provision as being void as against public policy or void as unconscionable. . . .'" *Miller*, 909 S.W.2d at 343 (quoting *Fleming v. CNA Ins. Co.*, 597 A.2d 1206, 1208 (Pa. Super. Ct. 1991)).

This analogous case law out of Kentucky fortifies the Court's prediction that the Pennsylvania Supreme Court would find Allstate's examination requirement in conflict with the MVFRL and thus void as against public policy.

**6.      The Court Predicts That the Pennsylvania Supreme Court Would Find Allstate's Examination Requirement Void as Against Public Policy**

In summation, the Court predicts that the Pennsylvania Supreme Court would find Allstate's examination requirement, as alleged, in conflict with § 1796 of the MVFRL and thus void as against public policy. The examination requirement conflicts with the plain language of the statute and is inconsistent with the twin purposes of § 1796. Moreover, the Court is not persuaded by the "implication" of the Superior Court's decision in *Fleming* and, consequently, departs from the conclusion reached by the district court in *Williams*. Instead, the Court finds it appropriate to rely on the opinion of the district court in *Scott*, as well as the opinions of Judge Wettick in *Erie* and *Hoch*. Additionally, the Court finds the analogous case law from the Commonwealth of Kentucky addressing a similar statutory provision under similar factual circumstances compelling.

Accordingly, in light of the above discussion, Allstate's Motion to Dismiss will be denied with respect to Counts I and II of Sayles's Complaint.[13]

## B.    Count III: The Pennsylvania Unfair Trade Practices and Consumer Protection Law

Count III of Sayles's Complaint alleges that Allstate violated the UTPCPL. *See* 73 Pa. Cons. Stat. Ann. § 201-1, *et seq*. Specifically, Sayles contends that Allstate "willfully and intentionally falsely stated to Plaintiff and class members" that the parties "were required to submit to [a] physical exam at the unilateral direction of Allstate, even without a showing of good cause to a court and without a court order directing [them] to submit to insurance physical exams." (Compl. ¶ 73.) Sayles further claims that Allstate falsely stated that it could refuse to pay medical benefits until the unilaterally scheduled IME was completed. (*Id.*) In support of its Motion, Allstate argues that Sayles's claim is barred by the economic loss doctrine. (Doc. 11, at 15-16.) The Court agrees, and therefore Count III will be dismissed with prejudice.

Under Pennsylvania law, the economic loss doctrine "prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract." *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 671 (3d Cir. 2002) (quoting *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 618 (3d Cir. 1995)). The Pennsylvania Supreme Court has not yet ruled on whether the economic loss doctrine bars claims

---

[13]    As stated in Plaintiff's Complaint, "[t]he present matter arises under Pennsylvania Motor Vehicle Financial Responsibility Law 75 P.A.C.S.A. § 1796." (Compl. ¶ 38.) Count II of the Complaint seeks damages exclusively for violations of § 1796. Defendant's Motion to Dismiss Counts I and II is premised entirely on the argument that the examination requirement is enforceable notwithstanding § 1796, which the Court rejects. (Doc. 11, at 7-11.) Defendant has not challenged Plaintiff's ability to recover damages pursuant to a cause of action under § 1796. *Cf., e.g.*, *Richter v. Geico Indem. Co.*, 797 F. Supp. 2d 529, 533 (E.D. Pa. 2011) (noting federal courts allow § 1716 claims for unpaid medical bills asserted by insureds against insurers to proceed). As such, the Court expresses no opinion on this issue.

arising under the UTPCPL. *See Ridolfi v. State Farm Mut. Auto. Ins. Co.*, 146 F. Supp. 3d 619, 626 (M.D. Pa. 2015). However, the Third Circuit Court of Appeals has predicted that the Commonwealth's highest court would hold that the economic loss doctrine bars UTPCPL claims of intentional fraud for solely economic losses, except in situations where the fraud occurs outside of the contract. *See Werwinski*, 286 F.3d at 681. The Court is bound by this holding.[14] Thus, "a UTPCPL claim is barred where allegedly deceptive conduct is clearly 'interwoven' with an insurance contract and a plaintiff seeks damages that flow from the contract." *Ridolfi*, 146 F. Supp. 3d at 626; *see Murphy v. State Farm Mut. Auto. Ins. Co.*, No. 16-2922, 2016 WL 4917597, at *5 (E.D. Pa. Sept. 15, 2016) ("Thus, '[i]nducement claims remain viable only when a party makes a representation extraneous to the contract, but not when the representations concern the subject matter of the contract or the party's performance.'" (quoting *Reilly Foam Corp. v. Rubbermaid Corp.*, 206 F. Supp. 2d 643, 659 (E.D. Pa. 2002))).

Here, Sayles's UTPCPL claim is clearly interwoven with her insurance contract. Her claim is premised entirely on allegations that Allstate told its insureds that they were required to submit to an IME per the terms of their insurance policy, and that Allstate would not pay medical benefits until the IME was completed. (Compl. ¶¶ 73-74.) This "communication from her insurance company was related to, and indeed was centered on, the substance of the contract of insurance Plaintiff maintained with Defendant," and therefore is barred by the economic loss doctrine. *Ridolfi*, 146 F. Supp. 3d at 627.

---

[14]     Subsequent to the Third Circuit's decision in *Werwinski*, the Pennsylvania Superior Court held that UTPCPL claims are not subject to the economic loss doctrine because they are statutory and do not sound in negligence. *Knight v. Springfield Hyundai*, 81 A.3d 940, 952 (Pa. Super. Ct. 2013). Although some district courts have found that *Werwinski* is no longer controlling in light of *Knight*, the Court concludes that it is bound by the prediction announced in *Werwinski* unless the Third Circuit or the Pennsylvania Supreme Court rules otherwise. *See Ridolfi*, 146 F. Supp. 3d at 626.

Accordingly, Allstate's Motion to Dismiss will be granted with respect to Count III of Sayles's Complaint.

## C.    Count IV: Pennsylvania's Insurance Bad Faith Act

In Count IV, Sayles alleges a bad faith claim pursuant to Pennsylvania's insurance bad faith statute. *See* 42 Pa. Cons. Stat. Ann. § 8371. Sayles alleges that Allstate acted in bad faith when it falsely stated to its insureds that they were required to undergo IMEs at Allstate's unilateral direction, and that Allstate could refuse to pay medical benefits until the exams were completed despite the fact that Allstate did not obtain a court order predicated upon "good cause" compelling such exams. (Compl. ¶¶ 83, 86.) In support of dismissal, Allstate argues that Sayles has failed to allege conduct on the part of Allstate that constitutes bad faith, given that provisions like the examination requirement have been upheld by other courts. (Doc. 11, at 16-17.) The Court finds that Sayles has failed to allege a claim for bad faith against Allstate and will dismiss Count IV without prejudice.

In order to state a claim of bad faith against an insurer, the insured must allege: "(1) that the insurer did not have a reasonable basis for denying benefits under the policy; and (2) that the insurer knew of or recklessly disregarded its lack of a reasonable basis in denying the claim." *Nw. Mut. Life Ins. Co. v. Babayan*, 430 F.3d 121, 137 (3d Cir. 2005). However, "[b]ad faith cannot be found where the insurer's conduct is in accordance with a reasonable but incorrect interpretation of the insurance policy and the law." *Bostick v. ITT Hartford Grp., Inc.*, 56 F. Supp. 2d 580, 587 (E.D. Pa. 1999); *see Aumen v. Nationwide Mut. Ins. Co.*, No. 1:10-CV-597, 2011 WL 1120414, at *6 (M.D. Pa. Mar. 8, 2011) ("[R]egardless of whether Defendant knew of such case law at the time it made its initial determination to deny coverage or whether such holding supported its position as to the interpretation of the term 'fee' within the exclusion, the undeniable conclusion is that its interpretation was reasonable."); *Emp'rs Mut. Cas. Co. v. Loos*, 476 F. Supp. 2d 478, 496 (W.D. Pa. 2007) ("Pennsylvania law does not recognize bad faith

where an insurer makes 'a reasonable legal conclusion based on an area of the law that is uncertain or in flux.'" (quoting *Brown v. Progressive Ins. Co.*, 860 A.2d 493, 501 (Pa. Super. Ct. 2004))).

Here, even when viewing all well-pleaded allegations as true, the Complaint fails to state a claim for bad faith. Allstate clearly had a reasonable basis for denying Sayles's medical benefits under the Policy. As the Court noted above, the Pennsylvania Supreme Court has not determined whether insurers can include mandatory IME provisions in their insurance policies without violating the MVFRL. Additionally, the district court in *Williams* reached a different conclusion than the Court does today, in reliance on the Pennsylvania Superior Court's decision in *Fleming*. It was reasonable for Allstate to rely on the holding in *Williams*, which supported Allstate's decision to deny Sayles's medical benefits based on her failure to submit to an IME per the terms of the Policy. Because Sayles's bad faith claim is predicated entirely on the examination requirement, the Court finds that the Complaint alleges only that Allstate made a "reasonable legal conclusion based on an area of the law that is uncertain or in flux." *Loos*, 476 F. Supp. 2d at 496 (quoting *Brown*, 860 A.2d at 501). Accordingly, the Court will grant Allstate's Motion to Dismiss with respect to Count IV of Sayles's Complaint.

**D.      Count V**: **Breach of the Duty of Good Faith and Fair Dealing**

Sayles next contends that Allstate breached its duty of good faith and fair dealing in requiring its insureds to submit to IMEs at its unilateral direction and representing that it could refuse to pay medical benefits until the IME was completed. (Compl. ¶ 99.) Allstate contends that Sayles's claim fails as a matter of law because the implied covenant alleged conflicts with an express term of the Policy. (Doc. 11, at 19.) The Court agrees and will dismiss Count V with prejudice.

"The covenant of good faith and fair dealing 'involve[s] an *implied* duty to bring about a condition or to exercise discretion in a reasonable way.'" *USX Corp. v. Prime*

*Leasing Inc.*, 988 F.2d 433, 438 (3d Cir. 1993) (quoting Howard O. Hunter, Modern Law of Contracts, ¶ 5.03, at 5-15 (1986)) (emphasis in original). Implied covenants are "necessarily mutually exclusive" from the express terms of a contract, that is, "one can invoke 'implied' terms only when there are no express terms in the contract relating to the particular issue." *Id.* "There can be no implied covenant as to any matter specifically covered by the written contract between the parties." *Id.* at 439 (quoting *Reading Terminal Merchs. Ass'n v. Samuel Rappaport Assocs.*, 456 A.2d 552, 557 (Pa. Super. Ct. 1983)). "Thus, it is only '[i]n the *absence of an express provision*, [that] the law will imply an agreement by the parties to a contract to do and perform those things that according to reason and justice they should do in order to carry out the purpose for which the contract was made and to refrain from doing anything that would destroy or injure the other party's right to receive the fruits of the contract.'" *Id.* (quoting *Daniel B. Van Campen Corp. v. Bldg. & Constr. Trades Council*, 195 A.2d 134, 136-37 (Pa. Super. Ct. 1963)) (emphasis in original). Moreover, "[a] party is not entitled to maintain an implied duty of good faith claim where the allegations of bad faith are identical to a claim for relief under an established cause of action." *Northview Motors, Inc. v. Chrysler Motors Corp.*, 227 F.3d 78, 91-92 (3d Cir. 2000); *see Lyon Fin. Servs., Inc. v. Woodlake Imaging, LLC*, No. Civ.A. 04-CV-3334, 2005 WL 331695, at *8 (E.D. Pa. Feb. 9, 2005).

Sayles's claim against Allstate for a breach of the duty of good faith and fair dealing relates entirely to the examination requirement in the Policy–an express term of the contract. Thus, Sayles cannot bring a claim for a breach of an implied covenant because an express term in the contract relates to this particular issue. Moreover, the allegations in Count V are essentially identical to those in Counts I and II, which seek a declaratory judgment and allege a violation of 75 Pa. Cons. Stat. Ann. § 1796. Thus, there is no reason for the Court to "imply" a separate cause of action for breach of the duty of good faith and fair dealing. *See Northview Motors, Inc.*, 227 F.3d at 92 (citing *Parkway Garage, Inc. v. City of Phila.*, 5 F.3d 685, 701-02 (3d Cir. 1993)). Consequently, Sayles may not maintain her claim that Allstate breached an implied

covenant of good faith and fair dealing. Allstate's Motion will therefore be granted with respect to Count V.

### E. Count VI: Unjust Enrichment

Sayles's Complaint also includes a claim for unjust enrichment based on the alleged savings Allstate secured in refusing to pay the medical benefits of its insureds based on the examination requirement. (Compl. ¶¶ 105, 107.) Allstate contends that Sayles cannot maintain a claim for unjust enrichment because she has pled the existence of an express contract, which precludes a claim for unjust enrichment. (Doc. 11, at 19-20.) The Court finds that the Complaint fails to state a claim for unjust enrichment and will dismiss Count VI with prejudice.

In order to state a claim for unjust enrichment under Pennsylvania law, the plaintiff must allege that (1) she conferred a benefit on the defendant, (2) the defendant appreciated the benefit, and (3) it would be inequitable to allow the defendant to keep the benefit without paying for it. *Curley v. Allstate Ins. Co.*, 289 F. Supp. 2d 614, 619 (E.D. Pa. 2003) (citing *Styer v. Hugo*, 619 A.2d 347, 350 (Pa. Super. Ct. 1993)). If unjust enrichment has occurred, "courts will imply a quasi contract–which the Pennsylvania Commonwealth Court has defined as 'not really a contract at all, but a fictional contract which is a form of the remedy of restitution'–and require the defendant to pay the plaintiff the value of the benefit conferred." *Id.* (quoting *Crawford's Auto Ctr. v. State Police*, 655 A.2d 1064, 1070 (Pa. Commw. Ct. 1995)).

Sayles's quasi-contractual claim fails, however, because the relationship between Sayles and Allstate is founded upon an express contract. "Pennsylvania law has long recognized that the doctrine of unjust enrichment is unavailable where, as here, 'the relationship between parties is founded on a written agreement or express contract.'" *Curley*, 289 F. Supp. 2d at 619-20 (quoting *Schott v. Westinghouse Elec. Corp.*, 259 A.2d 443, 448 (Pa. 1969)); *see Grudkowski v. Foremost Ins. Co.*, 556 Fed. Appx. 165,

169-70 (3d Cir. 2014) ("'[T]he doctrine of unjust enrichment is inapplicable when the relationship between parties is founded upon a written agreement or express contract, regardless of how harsh the provisions of such contracts may seem in the light of subsequent happenings.' Because the relationship between [plaintiff] and [defendant] was governed by valid insurance contracts, unjust enrichment cannot provide [plaintiff] a basis for relief." (quoting *Wilson Area Sch. Dist. v. Skepton*, 895 A.2d 1250, 1254 (Pa. 2006))) (internal quotation marks omitted); *Wingert v. T.W. Phillips Gas & Oil Co.*, 157 A.2d 92, 94 (Pa. 1959) ("[The doctrine of unjust enrichment] applies only to situations where there is no legal contract."); *see also Century Idem. Co. v. URS Corp.*, No. 08-5006, 2009 WL 2446990, at *10 (E.D. Pa. Aug. 7, 2009) (dismissing unjust enrichment claim because Plaintiff "failed to take advantage of its contractual rights" and thus it was "not appropriate" to "invoke an equitable remedy of unjust enrichment"). As explained by the Pennsylvania Supreme Court, this "'bright-line rule . . . . embodies the principle that parties in contractual privity . . . are not entitled to the remedies available under a judicially-imposed quasi[-]contract [i.e., the parties are not entitled to restitution based upon the doctrine of unjust enrichment] because the terms of their agreement (express and implied) define their respective rights, duties, and expectations." *Skepton*, 895 A.2d at 1254 (quoting *Curley*, 289 F. Supp. 2d at 620-21) (alterations in original).

Here, although the Court has concluded that the examination requirement appears to be unenforceable as void as against public policy, the Complaint clearly states that Sayles and Allstate entered into an express contract for automobile insurance. (*See, e.g.*, Compl. ¶¶ 1 (admitting that plaintiffs are "insureds covered by auto insurance policies issued by" Allstate "in accordance with Pennsylvania law"), 13 (admitting Plaintiff was an insured under Allstate's insurance Policy at all relevant times), 43.) It is abundantly clear that the pertinent "relationship" between the parties is founded upon the Policy. As such, Pennsylvania's "bright line rule" applies, and the quasi-contract theory of unjust enrichment is inapplicable. *Skepton*, 895 A.2d at 520; *see Curley*, 289 F. Supp. 2d at 620-21. Although the Complaint does not contain a claim for

31

breach of contract, Plaintiff has not argued, and the Court does not find, that this omission has any bearing on this rule. *See Curley*, 289 F. Supp. 2d at 619-20. Indeed, it is clear that the foundation of Plaintiff's claim is the insured-insurer relationship between Sayles and Allstate, which was created by an express agreement that Sayles acknowledges.

Because the relationship between the parties is founded on the Policy, Allstate's Motion to Dismiss will be granted with respect to Count VI.

**F.**     **Counts VII and VIII**: **Intentional Misrepresentation and "Alternative Claims for Medical Benefits"**

Lastly, Allstate moves to dismiss Sayles's claims for intentional misrepresentation and medical benefits[15] on the ground that they are barred by the gist of the action doctrine. (Doc. 11, at 20-21.) The Court agrees, and will dismiss these claims with prejudice.

The gist of the action doctrine forecloses a tort claim if: "(1) it arises solely from a contract between the parties; (2) the duties allegedly breached were created and grounded in the contract itself; (3) the liability stems from a contract; or (4) the tort claim essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of a contract." *Tennis v. Ford Motor Co.*, 730 F. Supp. 2d 437, 446 (W.D. Pa. 2010). "[T]he gist of the action test 'requires the court to focus on the substance of the dispute, or more colloquially, to ask the question, "What's the case really about?"'" *Smith v. Lincoln Ben. Life Co.*, 395 Fed. Appx. 821, 823 (3d Cir. 2010) (quoting *Pediatrix Screening, Inc. v. TeleChem Int'l, Inc.*, 602 F.3d 541, 550 (3d Cir. 2010)). The gist doctrine "precludes plaintiffs from 'recasting ordinary breach of contract

---

[15]     It is unclear upon what theory Plaintiff brings this claim. Based on the allegations raised in this Count, the Court assumes Plaintiff is attempting a claim that sounds in tort. (Compl. ¶¶ 124-127.)

claims into tort claims' and maintains the 'conceptual distinction between breach of contract claims and tort claims.'" *Id.* (quoting *Pediatrix Screening*, 602 F.3d at 548). In the context of an insured raising a misrepresentation claim against an insurer, the Third Circuit has explained:

> Applying the gist doctrine here with respect to the [misrepresentation] [c]laim, it is evident that the parties' relationship and duties were framed by the insurance policy. [The insurer's] alleged misrepresentations and subsequent failure to pay death benefits arose from the insurance contract between the parties and revolved around the provisions for payment, grace period, and lapse. Indeed, this case is 'really about' the policy provisions of the contract, and the claims and liability cannot be determined without looking to the terms of the contract. The alleged misrepresentations were directly related to the underlying contractual rights and obligations, and the District Court correctly concluded that the gist of the action sounded in contract and barred Smith's [misrepresentation] claim.

*Id.* (internal citation omitted); *see Yakubov v. GEICO Gen. Ins. Co.*, No. 11-3082, 2011 WL 5075080, at *2 (E.D. Pa. Oct. 24, 2011) (dismissing intentional misrepresentation claim based on the gist doctrine where plaintiff alleged insurer's promise to pay income loss benefits was "wholly illusory," because the claim was "really about" the insurer's alleged breach of its obligations under the policy and because the insurer's failure to pay income loss benefits to which plaintiff was entitled would be a breach of the policy); *Bruno v. Erie Ins. Co.*, 106 A.3d 48, 68 (Pa. 2014) ("If the facts of a particular claim establish that the duty breached is one created by the parties by the terms of their contract–i.e., a specific promise to do something that a party would not ordinarily have been obligated to do but for the existence of the contract–then the claim is to be viewed as one for breach of contract.").

Here, the Court finds it appropriate to apply the gist of the action doctrine to bar Sayles's intentional misrepresentation and "medical benefits" claims because this suit is "really about" Allstate's refusal to pay benefits under the Policy. The alleged fraud stems from Allstate's misrepresentations to Sayles and other insureds that they were not entitled to PIP benefits, that their insurance policies would pay medical expenses for bodily injuries arising out of the maintenance or use of a motor vehicle, and in the

assertions made by Allstate in the "Explanation of Benefits" section of the Policy. (Compl. ¶¶ 113-116.) It is clear to the Court that all of the allegedly fraudulent and deceptive acts arose from the contractual relationship between Sayles and Allstate, and that any "duty breached" was created by the terms of the Policy. Thus, Sayles's claims stemming from these acts are barred by the gist of the action doctrine. *See Yakubov*, 2011 WL 5075080, at *2; *Lombardi v. Allstate Ins. Co.*, No. 08-949, 2009 WL 1811540, at *11 (W.D. Pa. June 23, 2009). Although Plaintiff has omitted a claim for breach of contract from her Complaint, the Court has been presented with no reason for why such an omission–whether strategic or inadvertent–should permit a plaintiff to recast a claim sounding in contract into a tort claim and effectively circumvent the application of the gist doctrine. *See Hospicomm, Inc. v. Fleet Bank, N.A.*, 338 F. Supp. 2d 578, 582-83 (E.D. Pa. 2004) (dismissing claims under gist doctrine because the duties plaintiff accused defendant of violating sounded in contract rather than in tort). Indeed, considering that the purpose of the doctrine is to maintain the "conceptual distinction between breach of contract claims and tort claims," *Smith*, 395 Fed. Appx. at 823 (citation omitted), the Court sees no reason to allow these tort claims to proceed simply because Plaintiff chose not to allege a breach of contract claim.

Accordingly, the Court will grant Allstate's Motion with respect to Counts VII and VIII.

**G.     Leave to Amend**

The Third Circuit has instructed that if a complaint is vulnerable to a 12(b)(6) dismissal, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002) (citing *Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000)). Here, because the economic loss doctrine bars Sayles's UTPCPL claim, an amendment would be futile. Similarly, since the facts and circumstances of this case would not support recovery on the claim for breach of the

duty of good faith and fair dealing or unjust enrichment claim, amendment of these claims also would be futile. Lastly, because the gist of the action doctrine bars Sayles's claims for intentional misrepresentation and "medical benefits," an amendment of these claims would likewise be futile. Therefore, these claims will be dismissed with prejudice. However, because it is unclear whether Sayles may be able to plausibly allege a claim for bad faith, the Court will grant her leave to amend to state a plausible claim in accordance with this opinion, if she is able to do so.

## V. Conclusion

For the above stated reasons, Defendant Allstate's Motion to Dismiss (Doc. 10) will be granted in part and denied in part.

An appropriate order follows.


May 10, 2016                                         /s/ A. Richard Caputo

Date                                                A. Richard Caputo

                                                    United States District Judge