## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SAMANTHA SAYLES, | : | Civil No. 3:16-CV-1534 |
| | : | |
| **Plaintiff,** | : | |
| | : | **(Judge Mannion)** |
| v. | : | |
| | : | **(Magistrate Judge Carlson)** |
| ALLSTATE INSURANCE CO., | : | |
| | : | |
| **Defendant.** | : | |

## MEMORANDUM OPINION

### I.     Factual Background and Procedural History

We are now called upon, once again, to consider a longstanding legal saga. In this case, we most assuredly do not write upon a *tabula rasa*. Quite the contrary, over the past seven years, this litigation has commanded the attention of at least five judges of this court, as well as the Third Circuit Court of Appeals and the Pennsylvania Supreme Court. As a result of this litigation, the issues before us have been substantially narrowed and focused.

This lawsuit began its way in federal court on July 26, 2016, when Allstate removed Ms. Sayles' complaint from the Court of Common Pleas of Pike County. (Doc. 1). Ms. Sayles' state court complaint was cast as a class action brought against Allstate on behalf of the plaintiff and other similarly situated Allstate insureds. (Doc. 1-1). In her complaint, Ms. Sayles alleged that she had been injured in a 2015 motor

1

vehicle accident at a time when she was insured through Allstate. (Id., ¶¶ 13-15). According to the complaint, Allstate had refused to accord benefits to Sayles. Instead, citing to provisions of its policy, Allstate ordered Ms. Sayles to submit to an independent medical examination ("IME") by a doctor of its choosing as a condition for consideration of her claim. (Id., ¶¶ 16-37). Notably, Ms. Sayles alleged that Allstate sought to compel her and others to undergo these examinations without first obtaining a court order directing the examination or making a showing of good cause. (Id.)

According to Sayles, this insurance company practice violated Section 1796(a) of the PMVFRL, which provides that:

(a) **General rule.--**Whenever the mental or physical condition of a person is material to any claim for medical, income loss or catastrophic loss benefits, a court of competent jurisdiction or the administrator of the Catastrophic Loss Trust Fund for catastrophic loss claims may order the person to submit to a mental or physical examination by a physician. The order may only be made upon motion for good cause shown. The order shall give the person to be examined adequate notice of the time and date of the examination and shall state the manner, conditions and scope of the examination and the physician by whom it is to be performed. If a person fails to comply with an order to be examined, the court or the administrator may order that the person be denied benefits until compliance.

75 Pa. Cons. Stat. § 1796(a). Sayles' complaint construed this statutory text as prescribing the sole and exclusive path for obtaining an IME from an insurance policy claimant in Pennsylvania. Since Allstate's alleged practice of unilaterally requiring IMEs without the benefit of a court order, or finding of good cause, did

not satisfy these statutory requirements, Sayles asserted that with respect to herself and other class members Allstate violated the PMVFRL when it conditioned consideration of a claim upon completion of an IME.

Based upon these averments, Sayles brought individual and class claims seeking a declaratory judgment that Allstate must follow the court order requirements of § 1796(a) when seeking to compel a claimant to submit to an IME. (Id., Count I). Sayles' complaint also asserted individual and class claims for damages based upon this alleged violation of the requirements of § 1796(a). (Id., Count II).[1] With the issues in this lawsuit framed in this fashion, the threshold question presented by Sayles' complaint was the issue of whether Allstate's alleged practice of unilaterally requiring IMEs without the benefit of a court order, or finding of good cause, violated § 1796(a).

As to this issue the courts were divided, a fact which was recognized by the district court in 2017 when it ruled upon a motion to dismiss filed by Allstate. (Doc. 35). Because of the legal uncertainty surrounding this threshold question, Allstate

---

[1] In addition, Sayles' original complaint brought a series of additional claims under the Pennsylvania Unfair Trade Practices Act, Pennsylvania's Insurance Bad Faith Act, as well as common law claims of breach of the duty of fair dealing, unjust enrichment, and intentional misrepresentation. (Id., Counts III-VIII). These claims were dismissed. (Docs. 35, 36). Sayles subsequently filed an amended complaint, (Doc. 54), which only pursues her PMVFRL claims and a companion breach of contract claim. (Doc. 54). Thus, currently the gravamen of this litigation is the allegation that Allstate's practices violated the PMVFRL.

sought, and obtained, leave to appeal this question to the United States Court of Appeals for the Third Circuit. (Docs. 37, 41, 42). The Court of Appeals, in turn, certified this state law question regarding the interplay between § 1796(a) and the terms of the Allstate policy to the Pennsylvania Supreme Court for its determination. On November 20, 2019, more than three years after this lawsuit commenced, the Pennsylvania Supreme Court definitely resolved this issue, holding that:

> [I]nsurers are required to follow Section 1796(a) when seeking to compel an insured to submit to an IME, when the insured has refused to voluntarily comply with such a request, and any insurance policy which purports to set requirements by which an insurer may compel an insured to undergo an IME is required to comport with that section.

Sayles, 219 A.3d at 1124. Accordingly, the State Supreme Court concluded that: "these IME policy provisions manifestly conflict with, and are repugnant to, the statutory protections for individuals insured under automobile insurance policies regarding the conduct of IMEs as established by the General Assembly in Section 1796(a); consequently, they are void as against the public policy of this Commonwealth." Id. at 1126–27. Given this definitive ruling by the state's highest court, the Third Circuit remanded this case to the district court for further proceedings. Sayles v. Allstate Ins. Co., No. 17-3463, 2019 WL 11317938 (3d Cir. Dec. 27, 2019).

With this merits issue definitively resolved, the parties then turned to the question of whether Sayles could maintain a class action lawsuit for damages in light

of the determination that Allstate's policy provisions were void as against public

policy. What then ensued was a protracted period of pretrial class certification

discovery, which spanned some two years and culminated on March 17, 2022. (Doc.

85). As part of this discovery on July 8, 2020, Plaintiff served her first Demand for

Production of Documents upon Allstate which sought the following documents:

> 9. For each year from February 12, 1984 , to the present, please provide
> a list of all of insureds, including names and addresses, insured by a
> Pennsylvania automobile insurance policy, that Allstate denied PIP
> benefits to based on the result of the mental or physical exam of the
> insured, as well as the amount of benefits that Allstate denied as to each
> insured based on the result of the mental or physical exam and any
> documents related to Allstate ' s denial of said benefits.

(Doc. 114-1, at 12). After what has been described as a laborious manual search of

its records, Allstate produced the following material: Applying the plaintiff's

proposed class selection criteria, Allstate identified some 151 instances between

2004 and November 2019[2] in which Allstate issued letters to customers calling for

the customers to undergo an IME as a condition to consideration of an injury claim

without first obtaining court authorization based upon a showing of good cause. Of

these 151 insureds, 137 attended IMEs; two refused; and twelve did not attend the

scheduled IMEs. With respect to the 137 individuals who attended IMEs, 130

---

[2] Following the Pennsylvania Supreme Court's decision in November of 2019, which
declared the Allstate policy provision void, Allstate avers that it ceased this practice
entirely.

persons did not dispute the results of the IME. The remaining seven who did dispute their IME results filed lawsuits which have now all been resolved. In addition, the two persons who refused to undergo an IME as part of this procedure also filed lawsuits which have been resolved. Once these insureds were accounted for, there remain only twelve putative class plaintiffs who received a notice from Allstate calling for them to attend an IME but chose not to attend. As to these twelve individuals, Allstate avers that one claimant was not denied benefits, leaving eleven other putative plaintiffs. According to Allstate, the claims of three of these insureds are time-barred, an argument Sayles disputed, potentially leaving only eight remaining, unresolved cases which may fit the plaintiff's class criteria.

Having received this initial response to its July 8, 2020, discovery demands, notably, at no time during this protracted discovery process did plaintiff's counsel seek to compel the additional class certification discovery which she now demands. Instead, the plaintiff was content to allow the discovery period to close without seeking further responses to these discovery demands. Rather, Sayles moved for class certification, arguing based upon the evidence provided by Allstate that there existed a putative class of some 151 individuals as to whom the evidence satisfied Rule 23(a)'s requirements of numerosity, commonality, typicality, and adequacy of representation. Sayles also alleged that the criteria of Rule 23(b)(3) are satisfied since questions common to the class predominate over individual questions and

because the class action device is superior to other methods to adjudicate Plaintiff's and the class members' claims. (Doc. 89).

This class certification motion was referred to us for consideration. Upon review, we disagreed with the plaintiff and recommended that the motion for class certification be denied. (Doc. 104). Mindful of the fact that, a "class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only,' " Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 348 (2011) (quoting Califano v. Yamasaki, 442 U.S. 682, 700–701 (1979)), we recognized that  "[c]lass certification is proper only 'if the trial court is satisfied, *after a rigorous analysis*, that the prerequisites' of Rule 23 are met." In re Hydrogen Peroxide Antitrust Litig., 552 F.3d 305, 309 (3d Cir. 2008) (quoting Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 161 (1982)) (emphasis added). In our view Sayles had not met this exacting standard. Instead, "we f[ou]nd that interrelated questions of ascertainability, commonality, numerosity, and lack of predominance preclude class certification in this case." (Doc. 104, at 18).

Presented with this adverse recommendation, on November 11, 2022, Sayles belatedly sought to compel further discovery to the demands which she had propounded more than two years earlier. (Doc. 109). Sayles brings this motion more than six years after she commenced the lawsuit, more than two years after

propounding her discovery requests, and eight months after the extended class discovery deadline had lapsed.

This class certification discovery motion was referred to us for our consideration and has now been fully briefed by all parties. For its part, Allstate opposes this tardy motion arguing that it is untimely, unduly burdensome, and will not lead to the discovery of evidence calculated to change the quantum of proof in a way which enable Sayles to carry her burden of proof and persuasion on these questions of commonality, predominance, ascertainability, and numerosity.

Upon reflection, we agree with Allstate and will deny this motion to compel.

## II.   <u>Discussion</u>

Rulings regarding the proper scope of discovery are matters consigned to the court's discretion and judgment. A court's decisions regarding the conduct of discovery will be disturbed only upon a showing of abuse of that discretion. <u>Marroquin-Manriquez v. I.N.S.</u>, 699 F.2d 129, 134 (3d Cir. 1983). This far-reaching discretion also extends to rulings by United States Magistrate Judges on discovery matters. In this regard:

> District courts provide magistrate judges with particularly broad discretion in resolving discovery disputes. <u>See</u> <u>Farmers & Merchs.</u> <u>Nat'l Bank v. San Clemente Fin. Group Sec., Inc.</u>, 174 F.R.D. 572, 585 (D.N.J. 1997). When a magistrate judge's decision involves a discretionary [discovery] matter . . ., "courts in this district have determined that the clearly erroneous standard implicitly becomes an abuse of discretion standard." <u>Saldi v. Paul Revere Life Ins. Co.</u>, 224

F.R.D. 169, 174 (E.D. Pa. 2004) (citing Scott Paper Co. v. United States, 943 F. Supp. 501, 502 (E.D. Pa. 1996)).  Under the standard, a magistrate judge's discovery ruling "is entitled to great deference and is reversible only for abuse of discretion."  Kresefky v. Panasonic Commc'ns and Sys. Co., 169 F.R.D. 54, 64 (D.N.J. 1996); see also Hasbrouck v. BankAmerica Hous. Servs., 190 F.R.D. 42, 44-45 (N.D.N.Y. 1999) (holding that discovery rulings are reviewed under abuse of discretion standard rather than de novo standard); EEOC v. Mr. Gold, Inc., 223 F.R.D. 100, 102 (E.D.N.Y. 2004) (holding that a magistrate judge's resolution of discovery disputes deserves substantial deference and should be reversed only if there is an abuse of discretion).

Halsey v. Pfeiffer, No. 09-1138, 2010 WL 2735702, at *1 (D.N.J. Sept. 27, 2010).

The exercise of this discretion is guided, however, by certain basic principles. At the outset, Rule 26(b) of the Federal Rules of Civil Procedure generally defines the scope of discovery permitted in a civil action, prescribes certain limits to that discovery, and provides as follows:

(b) Discovery Scope and Limits.

(1) *Scope in General*. Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b).

Thus, our discretion is limited in a number of significant ways by the scope of Rule 26 itself, which provides for discovery of only "nonprivileged matter that is relevant to any party's claim or defense." Accordingly, "[t]he Court's discretion in ruling on discovery issues is, therefore, restricted to valid claims of relevance and privilege." Robinson v. Folino, No. 14-227, 2016 WL 4678340, at *2 (citing Jackson v. Beard, No. 11-1431, 2014 WL 3868228, at *5 (M.D. Pa. Aug. 6, 2014) ("Although 'the scope of relevance in discovery is far broader than that allowed for evidentiary purposes, it is not without its limits.' Courts will not permit discovery where a request is made in bad faith, unduly burdensome, irrelevant to the general subject matter of the action, or relates to confidential or privileged information") (internal citations omitted)).

Therefore, at the outset, it is clear that Rule 26's definition of that which can be obtained through discovery reaches any nonprivileged matter that is relevant to any party's claim or defense, and valid claims of relevance and privilege still cabin and restrict the court's discretion in ruling on discovery issues. Furthermore, the scope of discovery permitted by Rule 26 embraces all relevant information, a concept which is not confined to admissible evidence but is also defined in the following terms: "Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). Rather, Rule 26 states that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant

to any party's claim or defense." This concept of relevance is tempered, however, by principles of proportionality. Thus, we are now enjoined to also consider whether the specific discovery sought is "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). "Thus, it has been said that the amended rule 'restores the proportionality factors to their original place in defining the scope of discovery.' " Fassett v. Sears Holdings Corp., 319 F.R.D. 143, 150 (M.D. Pa. 2017) (quoting Wertz v. GEA Heat Exchangers Inc., No. 1:14-CV-1991, 2015 WL 8959408, at *2 (M.D. Pa. Dec. 16, 2015)).

In addition, when considering this motion, we are mindful that the party moving to compel discovery bears the initial burden of proving the relevance of the requested information. Morrison v. Philadelphia Housing Auth., 203 F.R.D. 195, 196 (E.D. Pa. 2001). Once that initial burden is met, "the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery (1) does not come within the broad scope of relevance as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of

broad disclosure." <u>In re Urethane Antitrust Litigation</u>, 261 F.R.D. 570, 573 (D. Kan. 2009).

Furthermore, it is an inherent aspect of the court's responsibility under Rule 1 to ensure the "just, speedy and inexpensive determination of every action" that we may set, and enforce, discovery deadlines. Thus, "where a party has submitted an untimely discovery request, the court can, and in the exercise of its discretion often should, refuse to compel compliance with that request." <u>George v. Pennsylvania Tpk. Comm'n</u>, No. 1:18-CV-766, 2020 WL 2745724, at *2 (M.D. Pa. May 27, 2020)(collecting cases). Further, it is well settled that this court has the discretion to deny a motion to compel because it was filed after the close of discovery since the Court of Appeals typically defers to district courts on "matters of docket control and conduct of discovery." <u>Schmidt v. Mars, Inc.</u>, 587 F. App'x 12, 15 (3d Cir. 2014) (citing <u>In re Fine Paper Antitrust Litig.</u>, 685 F.2d 810, 818 (3d Cir. 1982)). Thus, it is beyond dispute that, as a general rule:

> Motions to compel discovery must be filed within the time allowed for discovery itself. <u>See Finizie v. Shineski</u>, 351 Fed. Appx. 668, 672 (3d Cir. 2009) (affirming district court's denial of motion to compel that was filed at least two weeks "after discovery had closed."); <u>Rossetto v. Pabst Brewing Co.</u>, 217 F.3d 529, 542 (7th Cir. 2000) (finding no merit to contention that district court's denial of discovery motion was error where the motion was filed two months after the date set by the court for the completion of discovery and the plaintiffs gave no excuse for delay); <u>Frazier v. SCI Medical Dispensary Doctor + 2 Staff Members</u>, 2009 WL 136724, at *2 (M.D. Pa. Jan. 6, 2009) ("A motion to compel after the close of discovery is not timely and will be denied absent special circumstances."); <u>Days Inn Worldwide, Inc. v. Sonia</u>

Investments, 237 F.R.D. 395, 398 (N.D. Tex. 2006) (holding that motion to compel must be filed before close of discovery); Banks v. CBOCS West, Inc., 2004 WL 723767, at *2 (N.D. Ill. Apr. 1, 2004) (holding that motion to compel filed two months after the close of discovery was untimely).

Pauley v. Samuels, No. 1:15-CV-00158, 2019 WL 2106986, at *1 (W.D. Pa. May 14, 2019). This principle applies with particular force in a case such as this, where nothing prevented the movant from making a timely motion to compel. Moreover, in putative class actions, courts have declined to entertain tardy motions to compel, or seek other relief, like the motion filed here. See Dockery v. Heretick, No. 21-2753, 2022 WL 14810015, at *2 (3d Cir. Oct. 26, 2022); Graham v. Progressive Direct Ins. Co., 271 F.R.D. 112, 116 (W.D. Pa. 2010) (denying class action where plaintiff failed to comply with scheduling order).

In this case, we are constrained to conclude that good cause does not exist to re-open discovery in the fashion proposed by the plaintiff at this late date. Rather, we find that the plaintiff has failed to show good cause for adopting such a course in the seventh year of this litigation for several reasons. First, it appears that in some significant respects the discovery which Sayles now demands may be discovery that she never specifically sought in the course of this protracted litigation. On this score, Sayles admits in her Motion to Compel that her document demands "did not specifically seek information relative to the number of insureds who had been denied benefits based on the results of the mental or physical exam of the insured…." (Doc.

109 ¶ 7). Thus, Sayles would invite us, in part, to re-open substantive discovery seven years after this case began. We will decline this invitation, which is antithetical to the principles underlying Rule 1—the "just, speedy and inexpensive determination of every action."

Further, to the extent that Sayles' tardy motion to compel can be viewed as seeking information that was encompassed by her July 2020 discovery demand, the simple answer to this motion is that it is fatally out of time. Sayles propounded this discovery demand in July of 2020, more than three years ago. Fact discovery closed in March of 2022, more than one year ago, and Sayles did not seek to compel this discovery until November of 2022, eight months after the discovery deadline had lapsed. Moreover, Sayles only filed this motion to compel after she received our Report and Recommendation proposing that class certification be denied. Thus, when viewed in context, it is evident that this motion is little more than an untimely effort to stave off an adverse outcome. This course of action should not be sanctioned by the court.

Furthermore, in our view this additional discovery, while untimely and highly burdensome, would not alter the outcome of this class certification issue. In this regard it is well settled that:

> The class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." Califano v. Yamasaki, 442 U.S. 682, 700–701, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979). In order to justify a departure from that rule, "a

class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." East Tex. Motor Freight System, Inc. v. Rodriguez, 431 U.S. 395, 403, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977) (quoting Schlesinger v. Reservists Comm. to Stop the War, 418 U.S. 208, 216, 94 S.Ct. 2925, 41 L.Ed.2d 706 (1974)).

Wal-Mart Stores, Inc., 564 U.S. at 348–49. Because class action litigation is an exception to the general rule favoring litigation of individual claims by specific plaintiffs: "[t]o determine whether the putative class has satisfied . . . all applicable Rule 23 [class action certification] requirements[], the District Court must conduct a 'rigorous analysis' of the evidence and arguments presented." In re Lamictal Direct Purchaser Antitrust Litig., 957 F.3d 184, 190–91 (3d Cir. 2020).

Motions for class certification are governed by Rule 23 of the Federal Rules of Civil Procedure and entail a multi-faceted analysis. At the outset, the party seeking class certification must satisfy the threshold requirements of Rule 23(a), which sets the following four prerequisites for class certification:

(a) **Prerequisites.** One or more members of a class may sue or be sued as representative parties on behalf of all members only if:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

Each of these four threshold requirements—numerosity, commonality, typicality and adequacy—are, in turn, defined by case law to require specific and exacting showings. For example, with respect to Rule 23's numerosity requirement, the Court of Appeals counsels us that:

> Under Rule 23, the proposed class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). This "rule prevents putative class representatives and their counsel, when joinder can be easily accomplished, from unnecessarily depriving members of a small class of their right to a day in court to adjudicate their own claims." Marcus, 687 F.3d at 594–95. As with every Rule 23 requirement, plaintiffs must show the class is numerous enough by a preponderance of the evidence. Steak 'n Shake, 897 F.3d at 483–84. We presume joinder is impracticable when the potential number of class members exceeds forty. Id. at 486. This is a guidepost: showing the number of class members exceeds forty is neither necessary nor always sufficient. Marcus, 687 F.3d at 595. "The text" of Rule 23(a)(1) is "conspicuously devoid of any numerical minimum required for class certification." In re Modafinil Antitrust Litig., 837 F.3d 238, 249 (3d Cir. 2016). But while a class of forty-one does not automatically satisfy Rule 23(a)(1), a putative class that size faces a relaxed burden under our precedent. By contrast, the "inquiry into impracticability should be particularly rigorous when the putative class consists of fewer than forty members." Id. at 250.

> In recent opinions, we have given the numerosity requirement "real teeth." Steak 'n Shake, 897 F.3d at 484. When plaintiffs cannot directly identify class members, they "must show sufficient circumstantial evidence specific to the products, problems, parties, and geographic areas actually covered by the class definition to allow a district court to make a factual finding. Only then may the court rely on 'common sense' to forgo precise calculations and exact numbers." Marcus, 687 F.3d at 596. And "where a putative class is some subset of a larger pool, the trial court may not infer numerosity from the number in the larger

pool alone." <u>Hayes v. Wal-Mart Stores, Inc</u>., 725 F.3d 349, 358 (3d Cir. 2013).

<u>Allen v. Ollie's Bargain Outlet, Inc.</u>, 37 F.4th 890, 895–96 (3d Cir. 2022).

Further:

A class may be certified only if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury. This does not mean merely that they have all suffered a violation of the same provision of law." <u>Dukes</u>, 564 U.S. at 349–50, 131 S.Ct. 2541 (citation and quotation marks omitted). Instead, the claims "must depend upon a common contention." <u>Id</u>. at 350, 131 S.Ct. 2541. "That common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." <u>Id</u>. This test ensures that the "claims can productively be litigated at once." Id. When deciding whether the class raises a common question, "the court cannot be bashful. It must resolve all factual or legal disputes relevant to class certification, even if they overlap with the merits—including disputes touching on elements of the cause of action." <u>Marcus</u>, 687 F.3d at 591 (quotation marks omitted).

<u>Id.</u>, at 900. With respect to this commonality requirement, "[w]hat matters to class certification . . . is not the raising of common 'questions'—even in droves—but rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." <u>Ferreras v. Am. Airlines, Inc.</u>, 946 F.3d 178, 185 (3d Cir. 2019) (quoting <u>Wal-Mart Stores, Inc.</u>, 564 U.S. at 350)) (emphasis in original).

17

However, satisfying these four threshold prerequisites for class certification is only the first step in the multi-faceted analysis required by law. Once Rule 23(a)'s initial class certification criteria are met, the Court must also consider the provisions of Rule 23(b), which sets further limits on class certification, stating that:

**(b)** A class action may be maintained if Rule 23(a) is satisfied and if:

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**(3)** the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

Fed. R. Civ. P. 23(b).

" 'To assess predominance, a court ... must examine each element of a legal claim through the prism of Rule 23(b)(3)' by determining whether each element is 'capable of proof at trial through evidence that is common to the class rather than individual to its members.' " In re Suboxone (Buprenorphine Hydrochlorine & Naloxone) Antitrust Litig., 967 F.3d 264, 269 (3d Cir. 2020) (citations omitted). Therefore, "[t]he predominance requirement 'asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.' " Ferreras, 946 F.3d at 185. In practice:

The commonality and predominance requirements are closely linked. But the Rule 23(b)(3) predominance requirement is "far more demanding than the commonality requirement" found in Rule 23(a). In re Hydrogen Peroxide, 552 F.3d at 311 (internal quotation marks

18

omitted). In fact, "where an action is to proceed under Rule 23(b)(3), the commonality requirement is subsumed by the predominance requirement." Danvers Motor Co., Inc. v. Ford Motor Co., 543 F.3d 141, 148 (3d Cir. 2008) (internal quotation marks omitted). If the commonality requirement cannot be met, then the more stringent predominance requirement obviously cannot be met either. Cf. Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 623-24, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) ("Even if Rule 23(a)'s commonality requirement may be satisfied. . . , the predominance criterion is far more demanding.").

Id.

Finally, when making a class certification determination, we are enjoined that:

Class "certification is proper only if the trial court is satisfied, after a rigorous analysis" that all of the necessary Rule 23 requirements have been fulfilled. Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350-51, 131 S.Ct. 2541, 180 L.Ed.2d 374 (2011). The Rule "does not set forth a mere pleading standard." Id. at 350, 131 S.Ct. 2541. . . . A rigorous analysis requires that factual determinations be made by a preponderance of the evidence. Mielo v. Steak 'n Shake Operations, Inc., 897 F.3d 467, 483-84 (3d Cir. 2018). Thus, although a trial court has "broad discretion to control proceedings and frame issues for consideration under Rule 23[,]" "a class may not be certified without a finding that each Rule 23 requirement is met." In re Hydrogen Peroxide, 552 F.3d at 310. Prior to certifying a class, a district court must resolve every dispute that is relevant to class certification. Id. at 320.

Ferreras, 946 F.3d at 183.

In this case, Sayles invited the Court to certify the following class of plaintiffs

under Rule 23:

All persons injured in motor vehicle accidents and insured under Pennsylvania auto insurance policies issued by defendant which provided for medical benefits coverage whom defendant required or directed to submit to insurance physical exams without Court order

directing insured to submit to physical exams and who then had medical benefits denied based on defendant's medical exam actions.

(Doc. 89).

This proposed class definition had four essential elements. To qualify as a class member each putative plaintiff must: (1) be insured under Pennsylvania auto insurance policies issued by defendant which provided for medical benefits coverage but required or directed the insureds to submit to insurance physical exams without Court order directing insured to submit to physical exams; (2) be injured in motor vehicle accidents; (3) be called upon to submit to an IME; (4) and must be denied benefits based upon the IME results.

In our view, the existing evidence amply demonstrated that this class did not meet Rule 23's requirements of commonality, predominance, ascertainability, and numerosity. Moreover, it seems clear that further belated, but granular, discovery sought here would not aid Sayles' cause. In particular, we note that while Allstate identified some 151 instances between 2004 and November 2019 in which it issued letters to customers calling for the customers to undergo an IME as a condition to consideration of an injury claim without first obtaining court authorization based upon a showing of good cause, the discovery provided shows a clear lack of commonality and predominance of common issues among these individuals. Far from these 151 insureds sharing common and predominant elements in terms of any putative damages claims, it is clear that these individuals stand in very different

footings from one another. For example, of these 151 persons, 137 attended IMEs; two refused; and twelve did not attend the scheduled IMEs.

Further, even within these sub-groups, material differences abound. For example, with respect to the 137 individuals who attended IMEs, 130 persons did not dispute the results of the IME. Therefore, this sub-group consists of persons who underwent an IME and then were either satisfied with the outcome of their claims or chose not to dispute those claims. As to these 130 individuals the specific factors that led each of them individually to undergo, and then not contest, the IME would plainly predominate over any common issues. Further, it is reported that, with respect to the remaining seven persons who did dispute their IME results, these seven claimants filed lawsuits which have now all been resolved. In addition, the two persons who refused to undergo an IME as part of this procedure also filed lawsuits which have been resolved. Therefore, consideration of damages claims as to these two sub-groups would also entail a highly individualized assessment of each of their case resolutions, and these individual differences would predominate over their common concerns. Finally, once these insureds are accounted for, there would remain only twelve putative class plaintiffs who received a notice from Allstate calling for them to attend an IME but chose not to attend. As to these twelve individuals, Allstate avers that one claimant was not denied benefits, leaving eleven

other putative plaintiffs, a sub-group which, standing alone, simply cannot meet Rule 23's numerosity requirement.

Given the patent differences among these various factions, we have previously determined that Rule 23's commonality and predominance requirements have not been satisfied. Sayles should not now be permitted to re-open discovery issues which have long been foreclosed in order to place further onerous discovery burdens on Allstate in a speculative search for some latent commonality which might overcome the patent differences between these sub-groups. Finding that this discovery request is untimely, disproportionate, and lacking in merit, this motion to compel will be denied.[3]

---

[3] In reaching this conclusion we have considered plaintiff's reliance upon City Select Auto Sales Inc. v. BMW Bank of N. Am. Inc., 867 F.3d 434, 441 (3d Cir. 2017), and Carrera v. Bayer Corp., 727 F.3d 300, 309 (3d Cir. 2013), to support this tardy motion to compel. However, like the defendant we find these cases to be clearly distinguishable from the instant case on several scores. First, these cases do not present a scenario in which the movant had been delinquent by months or years in seeking to compel the requested discovery. Thus, these decisions did not consider the familiar proposition that in putative class actions, courts may properly to entertain tardy motions to compel like the motion filed here. See Dockery v. Heretick, No. 21-2753, 2022 WL 14810015, at *2 (3d Cir. Oct. 26, 2022); Graham v. Progressive Direct Ins. Co., 271 F.R.D. 112, 116 (W.D. Pa. 2010) (denying class action where plaintiff failed to comply with scheduling order). Second, the discovery issues in City Select and Carrera related to Rule 23's ascertainably requirement, and the requested discovery would clearly have shed light on the question of whether an ascertainable class existed. In contrast, the belated discovery that Sayles seeks would go to Rule 23's commonality and predominance requirements, and the existing evidence that has already been produced shows that individual, rather than common, questions predominate when evaluating specific damages claims.

An appropriate order follows.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

DATED: September 15, 2023.

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SAMANTHA SAYLES,** | : | **Civil No. 3:16-CV-1534** |
| | : | |
| **Plaintiff,** | : | |
| | : | **(Judge Mannion)** |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **ALLSTATE INSURANCE CO.,** | : | |
| | : | |
| **Defendant.** | : | |

## <u>ORDER</u>

AND NOW, this 15th day of September, in accordance with the accompanying Memorandum Opinion, IT IS ORDERED that the plaintiff's motion to compel, (Doc. 109) is DENIED.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge
