IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SAMANTHA SAYLES, | : | Civil No. 3:16-CV-1534 |
| | : | |
| Plaintiff, | : | |
| | : | (Judge Saporito) |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| ALLSTATE INSURANCE CO., | : | |
| | : | |
| Defendant. | : | |

## REPORT AND RECOMMENDATION

### I. Introduction

We are now called upon to consider the latest strange twist in this longstanding legal saga. In this case, we most assuredly do not write upon a *tabula rasa*. Quite the contrary, over the past eight years, this litigation has commanded the attention of at least six judges of this court, as well as the Third Circuit Court of Appeals and the Pennsylvania Supreme Court. As a result of this litigation, one would have thought that the issues before us would have been substantially narrowed and focused.

However, the motion for injunctive relief filed by Allstate in this case (Doc. 146), suggests that, for the plaintiff, some issues never die—they simply move at the convenience of counsel to a different legal forum. Allstate has filed a motion asking

1

this Court to intervene and enjoin Sayles from relitigating discovery issues that have long been foreclosed in this federal case through the expedient of filing a state court summons and then propounding extensive discovery demands in state court that plainly relate to issues that have been resolved by this Court in the instant case.

Finding that these efforts to circumvent the rulings of this court through the belated filing of a state case are improper, for the reasons set forth below it is recommended that this motion for injunctive relief (Doc. 146), be granted.

**II.     Factual Background and Procedural History**

This lawsuit began its way in federal court on July 26, 2016, when Allstate removed Ms. Sayles' complaint from the Court of Common Pleas of Pike County. (Doc. 1). In this removal petition Allstate alleged, *inter alia*, that Sayles' proposed state class action complaint was subject to removal since it entailed a potential class exceeding 100 putative plaintiffs. Sayles immediately endeavored to escape federal court, filing a motion to remand her complaint to state court. (Doc. 5). On September 8, 2016, the district court denied this motion, establishing that jurisdiction over this dispute properly resided in federal court. (Doc. 17).

What then followed were years of merits litigation of Ms. Sayles' state court complaint, which was cast as a class action brought against Allstate on behalf of the plaintiff and other similarly situated Allstate insureds. (Doc. 1-1). In her complaint, Ms. Sayles alleged that she had been injured in a 2015 motor vehicle accident at a

time when she was insured through Allstate. (Id., ¶¶ 13-15). According to the complaint, Allstate had refused to accord benefits to Sayles. Instead, citing to provisions of its policy, Allstate ordered Ms. Sayles to submit to an independent medical examination ("IME") by a doctor of its choosing as a condition for consideration of her claim. (Id., ¶¶ 16-37). Notably, Ms. Sayles alleged that Allstate sought to compel her and others to undergo these examinations without first obtaining a court order directing the examination or making a showing of good cause. (Id.)

According to Sayles, this insurance company practice violated Section 1796(a) of Title 75 of the Pennsylvania Consolidated Statutes, which provides that:

> **(a) General rule.--**Whenever the mental or physical condition of a person is material to any claim for medical, income loss or catastrophic loss benefits, a court of competent jurisdiction or the administrator of the Catastrophic Loss Trust Fund for catastrophic loss claims may order the person to submit to a mental or physical examination by a physician. The order may only be made upon motion for good cause shown. The order shall give the person to be examined adequate notice of the time and date of the examination and shall state the manner, conditions and scope of the examination and the physician by whom it is to be performed. If a person fails to comply with an order to be examined, the court or the administrator may order that the person be denied benefits until compliance.

75 Pa. Cons. Stat. § 1796(a). Sayles' complaint construed this statutory text as prescribing the sole and exclusive path for obtaining an IME from an insurance policy claimant in Pennsylvania. Since Allstate's alleged practice of unilaterally

requiring IMEs without the benefit of a court order, or finding of good cause, did not satisfy these statutory requirements, Sayles asserted that, with respect to herself and other class members, Allstate violated state law when it conditioned consideration of a claim upon completion of an IME.

Based upon these averments, Sayles brought individual and class claims seeking a declaratory judgment that Allstate must follow the court order requirements of § 1796(a) when seeking to compel a claimant to submit to an IME. (Id., Count I). Sayles' complaint also asserted individual and class claims for damages based upon this alleged violation of the requirements of § 1796(a). (Id., Count II).[1] With the issues in this lawsuit framed in this fashion, the threshold question presented by Sayles' complaint was the issue of whether Allstate's alleged practice of unilaterally requiring IMEs without the benefit of a court order, or finding of good cause, violated § 1796(a).

As to this issue the courts were divided, a fact which was recognized by the district court in 2017 when it ruled upon a motion to dismiss filed by Allstate. (Doc.

---

[1] In addition, Sayles' original complaint brought a series of additional claims under the Pennsylvania Unfair Trade Practices Act, Pennsylvania's Insurance Bad Faith Act, as well as common law claims of breach of the duty of fair dealing, unjust enrichment, and intentional misrepresentation. (Id., Counts III-VIII). These claims were dismissed. (Docs. 35, 36). Sayles subsequently filed an amended complaint, (Doc. 54), which only pursues her § 1796(a) claims and a companion breach of contract claim. (Doc. 54).

35). Because of the legal uncertainty surrounding this threshold question, Allstate sought, and obtained, leave to appeal this question to the United States Court of Appeals for the Third Circuit. (Docs. 37, 41, 42). The Court of Appeals, in turn, certified this state law question regarding the interplay between § 1796(a) and the terms of the Allstate policy to the Pennsylvania Supreme Court for its determination. On November 20, 2019, more than three years after this lawsuit commenced, the Pennsylvania Supreme Court definitely resolved this issue, holding that:

> [I]nsurers are required to follow Section 1796(a) when seeking to compel an insured to submit to an IME, when the insured has refused to voluntarily comply with such a request, and any insurance policy which purports to set requirements by which an insurer may compel an insured to undergo an IME is required to comport with that section.

Sayles, 219 A.3d at 1124. Accordingly, the State Supreme Court concluded that: "these IME policy provisions manifestly conflict with, and are repugnant to, the statutory protections for individuals insured under automobile insurance policies regarding the conduct of IMEs as established by the General Assembly in Section 1796(a); consequently, they are void as against the public policy of this Commonwealth." Id. at 1126–27. Given this definitive ruling by the state's highest court, the Third Circuit remanded this case to the district court for further proceedings. Sayles v. Allstate Ins. Co., No. 17-3463, 2019 WL 11317938 (3d Cir. Dec. 27, 2019).

With this merits issue definitively resolved, the parties then turned to the question of whether Sayles could maintain a class action lawsuit for damages in light of the determination that Allstate's policy provisions were void as against public policy. What then ensued was a protracted period of pretrial class certification discovery, which spanned some two years and culminated on March 17, 2022. (Doc. 85). As part of this discovery, on July 8, 2020, Plaintiff served her first Demand for Production of Documents upon Allstate which sought the following documents:

> 9. For each year from February 12, 1984 , to the present, please provide a list of all of insureds, including names and addresses, insured by a Pennsylvania automobile insurance policy, that Allstate denied PIP benefits to based on the result of the mental or physical exam of the insured, as well as the amount of benefits that Allstate denied as to each insured based on the result of the mental or physical exam and any documents related to Allstate ' s denial of said benefits.

(Doc. 114-1, at 12). After what has been described as a laborious manual search of its records, Allstate produced the following material: Applying the plaintiff's proposed class selection criteria, Allstate identified some 151 instances between 2004 and November 2019[2] in which Allstate issued letters to customers calling for the customers to undergo an IME as a condition to consideration of an injury claim without first obtaining court authorization based upon a showing of good cause. Of

---

[2] Following the Pennsylvania Supreme Court's decision in November of 2019, which declared the Allstate policy provision void, Allstate avers that it ceased this practice entirely.

these 151 insureds, 137 attended IMEs; two refused; and twelve did not attend the scheduled IMEs. With respect to the 137 individuals who attended IMEs, 130 persons did not dispute the results of the IME. The remaining seven who did dispute their IME results filed lawsuits which have now all been resolved. In addition, the two persons who refused to undergo an IME as part of this procedure also filed lawsuits which have been resolved. Once these insureds were accounted for, there remained only twelve putative class plaintiffs who received a notice from Allstate calling for them to attend an IME but chose not to attend. As to these twelve individuals, Allstate averred that one claimant was not denied benefits, leaving eleven other putative plaintiffs. According to Allstate, the claims of three of these insureds were time-barred, an argument Sayles disputed, potentially leaving only eight remaining, unresolved cases which seemed to fit the plaintiff's class criteria.

Having received this initial response to its July 8, 2020, discovery demands, notably, at no time during this protracted discovery process did plaintiff's counsel seek to compel the additional class certification discovery. Instead, the plaintiff was content to allow the discovery period to close without seeking further responses to these discovery demands.

Instead, Sayles moved for class certification, arguing based upon the evidence provided by Allstate that there existed a putative class of some 151 individuals as to whom the evidence satisfied Rule 23(a)'s requirements of numerosity, commonality,

7

typicality, and adequacy of representation. Sayles also alleged that the criteria of Rule 23(b)(3) were satisfied since questions common to the class predominated over individual questions and the class action device was superior to other methods to adjudicate Plaintiff's and the class members' claims. (Doc. 89).

This class certification motion was referred to us for consideration. Upon review, we disagreed with the plaintiff and recommended that the motion for class certification be denied. (Doc. 104). Mindful of the fact that, a "class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only,'" Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 348 (2011) (quoting Califano v. Yamasaki, 442 U.S. 682, 700–701 (1979)), we recognized that "[c]lass certification is proper only 'if the trial court is satisfied, *after a rigorous analysis*, that the prerequisites' of Rule 23 are met." In re Hydrogen Peroxide Antitrust Litig., 552 F.3d 305, 309 (3d Cir. 2008) (quoting Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 161 (1982)) (emphasis added). In our view, Sayles had not met this exacting standard. Instead, "we f[ou]nd that interrelated questions of ascertainability, commonality, numerosity, and lack of predominance preclude class certification in this case." (Doc. 104, at 18).

Presented with this adverse recommendation, on November 11, 2022, Sayles belatedly sought to compel further discovery to the demands which she had propounded more than two years earlier. (Doc. 109). Sayles brought this motion

more than six years after she commenced the lawsuit, more than two years after propounding her discovery requests, and eight months after the extended class discovery deadline had lapsed.

This class certification discovery motion was referred to us by the district court for our consideration. For its part, Allstate opposed this tardy motion arguing that it is untimely, unduly burdensome, and would not lead to the discovery of evidence calculated to change the quantum of proof in a way which would enable Sayles to carry her burden of proof and persuasion on these questions of commonality, predominance, ascertainability, and numerosity.

Upon reflection, we agreed with Allstate and denied this motion to compel. (Doc. 124). Sayles appealed this discovery ruling and lodged objections to our Report and Recommendation which recommended denying class certification of her claims. (Docs. 18, 125). These efforts by the plaintiff were unavailing. On March 8, 2024, the district court affirmed our discovery decision and adopted the Report and Recommendation denying Sayles' motion for class certification. (Docs. 129-32). These decisions, for all intents and purposes, closed the discvery and related class certification issues in this case, a task which had taken nearly eight years to achieve.

With the issues in this lawsuit now clearly defined, this matter was remanded to us for further proceedings. Upon receipt of an amended case management plan from the parties in which the plaintiff tried, yet again, to reopen discovery, (Doc.

9

135), on April 23, 2024, we referred this case for a settlement conference. (Doc. 136). In this settlement conference referral order we also made it unmistakably clear how any further lurking discovery issues should be addressed, stating as follows:

> In the event that the parties cannot reach an amicable resolution of this case, the defendant may file the proposed summary judgment motion referenced in the case management plan, along with any accompanying brief by **August 2, 2024**. The plaintiff may then oppose the motion, *citing any appropriate need for discovery*, on or before **August 23, 2024**.

(Id.) (Emphasis added).

It now appears that Sayles has ignored this clear instruction and is endeavoring to use the state courts to circumvent this Court's prior rulings. On June 24, 2024, the parties conducted a settlement conference which did not resolve this case. (Docs. 143, 144). The following day, June 25, 2024, we entered an order which stated in clear and precise terms that:

> [T]he defendant shall file the proposed summary judgment motion referenced in the case management plan, along with any accompanying brief by **August 2, 2024**. The plaintiff may then oppose the motion, *citing any appropriate need for additional specific and targeted discovery*, on or before **August 23, 2024**.

(Doc. 145).

Having twice been directed to raise any lingering discovery issues with this Court in the context of any dispositive motions, Sayles has chosen to ignore this direction. Instead, she has instigated a state action by filing a barebones summons to

10

serve as a legal vehicle for engaging in renewed discovery targeting this federal lawsuit. Moreover, the chronology of events in this case strongly suggests that Sayles has elected, in a premeditated fashion, to follow this unusual and inappropriate course since Allstate reports that:

> About an hour after a settlement conference occurred before Judge Arbuckle . . . , unbeknownst to Allstate and the undersigned, Plaintiff filed a Praecipe for a Writ of Summons in the Pike County Court of Common Pleas with a Notice of Deposition and a Request for Admission to Allstate "In Aid of Preparing the Complaint."

(Doc. 146, ¶ 8).

A review of the state court discovery propounded by Sayles in conjunction with this summons revealed that it was highly problematic in at least two respects. First, it was apparent that the discovery plainly sought information exclusively relating to the pending federal lawsuit, discovery that Sayles had twice been admonished to only pursue in this Court.[3] In addition, the discovery demands

---

[3] For example, Sayles' request for admissions sought an admission:

> That the factual allegation in paragraph 19 of Allstate Insurance Company's Notice of Removal, attached hereto as Exhibit A, filed in Sayles v. Allstate Ins. Co., No. 3:16-cv-01534, pending in the United States District Court for the Middle District of Pennsylvania, is true and correct.

Likewise, Sayles' notice of deposition commanded the production of:

> A copy of all documents, information and materials, used, cited, relied, serving as basis for or have any relation to following statements: "the

explicitly referred to statements made in the course of settlement discussions, potentially in contravention of Rule 408 of the Federal Rules of Evidence, which provides that:

> **(a) Prohibited Uses.** Evidence of the following is not admissible--on behalf of any party--either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction:
> **(1)** furnishing, promising, or offering--or accepting, promising to accept, or offering to accept--a valuable consideration in compromising or attempting to compromise the claim; and
> **(2)** conduct or a statement made during compromise negotiations about the claim--except when offered in a criminal case and when the negotiations related to a claim by a public office in the exercise of its regulatory, investigative, or enforcement authority.

Fed. R. Evid. 408.

Presented with this transparent attempt to use the state court in an effort to circumvent federal court orders and secure additional discovery directly related to

---

aggregate number of members of the proposed class is greater than 100 persons" and "Therefore, CAFA's requirement of a minimum putative class size of 100 or more persons is satisfied." The aforesaid statements were made in paragraphs 19 and 20 of defendant's Notice of Removal, in Case No. 3:16-cv-01534, SAMANTHA SAYLES, individually and on behalf of all other similarly situated, Plaintiffs, v. ALLSTATE INSURANCE COMPANY Defendant.

It is simply beyond dispute that these newly propounded state court discovery demands directly relate to this pending federal lawsuit,

this pending federal case, Allstate has moved to enjoin Sayles' curious conduct. (Doc. 146). This motion is fully briefed and is, therefore, ripe for resolution.

For the reasons set forth below, it is recommended that this motion for injunctive relief be granted.

### III. Discussion

In an extraordinary decision, after eight years of extensive litigation of discovery issues and substantive questions in federal court, Samantha Sayles chose to use the state courts to unilaterally renew discovery litigation which is directly related to this pending federal case. Sayles made this choice in the face of federal court orders which specifically admonished her to pursue any lingering discovery issues in this Court.

Sayles' curious choice now implicates considerations of comity and federalism, as well as the degree of deference which federal courts owe to their sister state courts. Several statutes guide us in navigating these core concepts inherent in the overlapping architecture of the state and federal courts. At the outset, the All Writs Act, broadly authorizes federal courts to take necessary actions in aid of their jurisdiction, stating that: "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). When presented with invitations to enjoin state legal process, however, his broad

grant of authority to issue all writs necessary or appropriate in aid of our jurisdiction is tempered by the Anti-Injunction Act, which provides that: "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283.

Given the important values of comity fostered by the Anti-Injunction Act it is clear that:

> The Act "is an absolute prohibition against enjoining state court proceedings, unless the injunction falls within one of three specifically defined exceptions." Atlantic Coast Line R.R. Co. v. Brotherhood of Locomotive Engineers, 398 U.S. 281, 286, 90 S.Ct. 1739, 26 L.Ed.2d 234 (1970). Consequently, "any injunction against state court proceedings otherwise proper under general equitable principles must be based on one of the specific statutory exceptions to § 2283 if it is to be upheld." Id. at 287, 90 S.Ct. 1739. These "exceptions are narrow and are not to be enlarged by loose statutory construction." Chick Kam Choo v. Exxon Corp., 486 U.S. 140, 146, 108 S.Ct. 1684, 100 L.Ed.2d 127 (1988) (citations, internal quotations and brackets omitted).

In re Prudential Ins. Co. of Am. Sales Prac. Litig., 261 F.3d 355, 364 (3d Cir. 2001). Thus, "Congress, . . ., has permitted injunctions in certain, specific circumstances, namely, [1] when expressly authorized by statute, [2] necessary in aid of the court's jurisdiction, or [3] necessary to protect or effectuate the court's judgment." Chick Kam Choo v. Exxon Corp., 486 U.S. 140, 146, 108 S. Ct. 1684, 1689, 100 L. Ed. 2d 127 (1988).

14

Yet, while we are cautioned to use these exceptions to the Anti-Injunction Act sparingly, it is clear that the Anti-Injunction Act is not a license for discovery forum shopping by disappointed litigants who wish to turn to the state courts to evade federal court discovery decisions. Quite the contrary, it is clear beyond peradventure that:

> [T]he All–Writs Act and the Anti–Injunction Act do extend to discovery. See e.g., Winkler, at 1202 (Both Acts give a district court the power to enjoin state discovery in order to protect the integrity of a federal court order); and Sperry Rand Corp. v. Rothlein, 288 F.2d 245, 248 (2d Cir.1961) (Both Acts give district court the authority to enjoin plaintiff from using "fruits of federal court discovery" in a state proceeding).

In re Prudential Ins. Co. of Am. Sales Prac. Litig., 261 F.3d at 368. Therefore, when a litigant attempts to instigate some state proceeding for the purpose of circumventing federal court discovery decisions in a pending case, we may, and often should, enjoin those state proceedings in aid of our ongoing jurisdiction.

When deciding whether an injunction is properly in aid of our jurisdiction, we should consider three factors.

> These factors are: (1) examining the nature of the federal action to determine what kinds of state court interference would sufficiently impair the federal proceeding; (2) assessing the state court's actions, in order to determine whether they present a sufficient threat to the federal action; and (3) considering principles of federalism and comity, for a primary aim of the Anti-Injunction Act is "to prevent needless friction between the state and federal courts."

15

Wallace v. Powell, No. CIV.A.3:09-CV-0291, 2010 WL 2367672, at *2 (M.D. Pa. June 9, 2010). Where an evaluation of these factors discloses state proceedings threaten to interfere with, and impede, the federal court's discovery decisions an injunction is entirely appropriate. Id.

So it is here. Citing the absolute ambiguity of the state court summons, which contains no factual averments, Sayles suggests that there is "actually no basis for Allstate's argument" that this belated resort state proceedings to conduct discovery that the plaintiff was specifically ordered to undertake in federal court interferes with our discovery orders and substantive rulings over the past eight years.

This contention is risible since the facts plainly belie this argument. At the outset, we note that there is an identity of parties in the state and federal cases. Moreover, the timing of the filing of this state court summons—which took place immediately upon the unsuccessful conclusion of the federal case settlement conference—clearly reveals this action to have been a premeditated decision by Sayles to attempt to bypass the federal courts in this longstanding litigation through some tardy resort to the state courts in the event that she was displeased with the outcome of the settlement conference. This expedient, and apparently pre-planned, course of action was particularly troubling since Sayles had been instructed twice in writing by this Court that she should pursue any lingering discovery issues in these federal proceedings.

16

Furthermore, whatever remaining questions might exist concerning whether Sayles sought to use this state process to secure discovery in her federal case in contravention of our orders is thoroughly dispelled when one considers the discovery Sayles has propounded along with this state court summons. The sole and exclusive focus of these discovery demands relates to the pending federal case. Thus, Sayles' request for admissions sought an admission:

> That the factual allegation in paragraph 19 of Allstate Insurance Company's Notice of Removal, attached hereto as Exhibit A, filed in Sayles v. Allstate Ins. Co., No. 3:16-cv-01534, pending in the United States District Court for the Middle District of Pennsylvania, is true and correct.

Similarly, Sayles' notice of deposition commanded the production of:

> A copy of all documents, information and materials, used, cited, relied, serving as basis for or have any relation to following statements: "the aggregate number of members of the proposed class is greater than 100 persons" and "Therefore, CAFA's requirement of a minimum putative class size of 100 or more persons is satisfied." The aforesaid statements were made in paragraphs 19 and 20 of defendant's Notice of Removal, in Case No. 3:16-cv-01534, SAMANTHA SAYLES, individually and on behalf of all other similarly situated, Plaintiffs, v. ALLSTATE INSURANCE COMPANY Defendant.

Accordingly, when we consider the factors which we should evaluate in determining whether an injunction in aid of our jurisdiction is appropriate, we find that there are substantial federal interests at stake here. These significant federal interests have been forged through eight years of litigation entailing both substantive rulings, and a host of discovery decisions, all of which govern Sayles' dispute with

Allstate. These important federal interests are further buttressed by our prior explicit instructions to Sayles that she must raise any remaining discovery concerns in federal court in connection with dispositive motions practice in this federal lawsuit. Given these prior admonitions, at this juncture our failure to enforce our instructions would be tantamount to giving Sayles a license to ignore federal court orders.

Moreover, allowing Sayles to forum shop and unilaterally pursue discovery concerning this federal case in state court would be particularly disruptive in the federal litigation which is now nearing completion after eight years. These disruptions are heightened by the fact that some of Sayles' discovery demands appear to seek discovery regarding matters related to federal court settlement discussions, topics which are cloaked in protection by the Federal Rules of Evidence.

Finally, there is no significant countervailing state interest that would be advanced by allowing his piecemeal federal court discovery to take place in our sister courts. The state "case" which Sayles uses as the legal predicate for this attempt to subvert federal court discovery rulings is a recent invention, lodged only after federal settlement discussions reached an impasse. Moreover, the state case is no case at all; Sayles has studiously avoided filing any complaint or other pleading which would outline in any comprehensible fashion what allegations she wishes to pursue that are independent of her longstanding lawsuit in federal court.

Taking all of these factors into consideration, we find that this transparent effort to obtain discovery concerning a pending federal case through the vehicle of a barebones state summons is entirely inappropriate. Accordingly, an injunction of this state litigation is expressly authorized by law. Therefore, we recommend that Allstate's motion for injunction, (Doc. 146), be granted.[4]

## IV. Recommendation

For the foregoing reasons, IT IS RECOMMENDED that Allstate's Motion for an Injunction, (Doc. 146), be GRANTED.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or

---

[4] Allstate's motion has also made a request for the imposition of sanctions. We will defer on this aspect of Allstate's motion pending the district court's resolution of the question of whether an injunction should issue here.

where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 17th day of October 2024.

                                                *S/ Martin C. Carlson*
                                                Martin C. Carlson
                                                United States Magistrate Judge